[Civ. No. 8156.   Third Dist.   Mar. 24, 1953.]

EVELYN JACKSON et al., Appellants, v. C. A. OSBORN et al., Respondents.

[Civ. No. 8157.   Third Dist.   Mar. 24, 1953.]

EVELYN JACKSON et al., Appellants, v. NATHAN L. CORNELL et al., Respondents.

Frank Loria and Sutter & Elledge for Appellants.

C. Ray Robinson, R. A. McCormick and William B. Boone for Respondents.

SCHOTTKY, J.—Evelyn Jackson and her husband, John Jackson, brought two actions to recover damages for alleged false arrest and imprisonment, naming various peace officers and their sureties as defendants in each suit. Defendant Cornell was Sheriff of Merced County; defendant Adcock was his deputy; and Deputy Borth was at that time serving as a special deputy sheriff for the county. Defendant Osborn was constable of the township in Merced County where plaintiffs resided. The actions were consolidated for trial and the jury rendered a verdict in favor of defendants in each case. Plaintiffs have appealed from the judgments entered on said verdicts.

Plaintiffs urge two grounds for reversal of the judgments: (1) The trial court erred in its refusal to instruct the jury as to the law of arrest without warrant concerning misdemeanors; and (2) the trial court erred in submitting to the jury the issue of the regularity of the warrant upon its face because as a matter of law the warrant issued from a court without jurisdiction. Before discussing these contentions we shall summarize briefly the evidence as disclosed by the record.

On the afternoon of March 26, 1950, defendant Borth observed one Harvey Jackson, son of plaintiffs, shooting a BB gun at a light bulb in the town of Winton. Three other boys were also involved, but when Borth stopped, Harvey Jackson ran; Borth spoke to the other three. He did not at that time know what Harvey Jackson's name was. The following day, Borth pointed him out on the street and was informed as to his name. Borth thereafter contacted defendant Adcock and advised him of the previous day's episode. At about 5:30 p.m., Borth and Adcock drove to the Jackson house in the sheriff's car, which was readily identifiable as such; Borth's testimony was that he wore his badge, and Adcock said he was in complete uniform. The purpose of the trip was to apprehend Harvey Jackson and take him to the detention home. The officers did not at that time have a warrant of arrest, and there is conflict in the testimony as to whether they had gone to the Jackson home pursuant to specific advice that no warrant was needed. Borth and Adcock were in agreement that Adcock made a telephone call to Mr. Silman, the probation officer

of Merced County. Borth's statement was that the call was placed after the abortive attempt to make the arrest without warrant. Adcock's testimony was that the call was made prior to going to the Jackson home, and that he was specifically advised by Silman that a warrant was not necessary to arrest in a juvenile matter of that kind. The officers were unable to complete their mission; although Adcock informed the Jacksons why they wanted Harvey and where they proposed to take him, both parents insisted that the officers could not take the boy; the Jacksons instead told Harvey to go into the house. The officers then returned to Atwater and appeared before Judge Walter, magistrate of the justice's court there, explaining the whole situation to him. Borth signed a complaint upon which Judge Walter issued two warrants, one for the arrest of Harvey Jackson for malicious mischief, and one for the arrest of the parents, under the Welfare and Institutions Code, for contributing to the delinquency of a minor. It was the officers' thought that the parents' refusal to surrender the boy without warrant amounted to contributing to the delinquency of a minor. The complaint upon which the warrants were issued was marked for identification, but was not offered or admitted into evidence; appellants say that it set forth no particulars as to the acts or omissions constituting the delinquency. Armed with the warrants, the officers enlisted the aid of defendant Osborn, the constable, and returned to the Jackson residence about 7:30 or 8 p. m., to complete the arrests. Osborn's testimony was that he was not certain what the warrant for Mr. and Mrs. Jackson was based on, though he knew that the warrant for Harvey was based upon "something about the boy shooting out lights, windows or something of the sort." Borth did not follow Adcock and Osborn into the house when the arrests were made, nor did he accompany them when the Jacksons were taken to jail. The Jacksons made no resistance, although they stated they would get the officers for this and that the officers would be sorry. They were incarcerated in the Merced county jail, where Mrs. Jackson remained from the evening of March 27th until April 7th; Mr. Jackson remained in jail seven days longer than his wife. Both plaintiffs testified that they were greatly distressed by the unsanitary and filthy condition of the jail and the unsavory character of the inmates.

Plaintiffs first contend that the court committed re-

versible error in refusing to give the following instruction offered by them:

"You are instructed that in order to justify an arrest without warrant the arrestor must proceed as soon as may be to make the arrest. And if instead of doing that he goes about other matters unconnected with the arrest, the right to make the arrest without a warrant ceases, and in order to make a valid arrest he must then obtain a warrant therefor."

Plaintiffs state that the court instructed the jury as to what constitutes false imprisonment and also gave the following instruction:

"You are instructed that section 43.5(a) of the Civil Code, which was in full force and effect at the time of the arrests out of which this suit arose, provides as follows:

" 'No cause of action for arrest pursuant to warrant regular on its face. There shall be no liability on the part of and no cause of action shall arise against any peace officer who makes an arrest pursuant to a warrant of arrest regular upon its face if such peace officer in making the arrest acts without malice and in the reasonable belief that the person arrested is the one referred to in the warrant.'

"If, therefore, you find that the warrants in this case were regular upon their face and the officers acted without malice and in the reasonable belief that Mr. and Mrs. Jackson were the persons referred to in the warrants, then I instruct you that your verdict must be in favor of all defendants and against the plaintiffs. Under such circumstances, the officers incur no liability whatsoever, regardless of how disastrous may have been the effect upon John Jackson and Evelyn Jackson."

Plaintiffs argue that in no way did the court tell the jury how to ascertain whether or not the warrant in question was "regular on its face" and that the requested instruction should have been given because, to quote plaintiffs: "Were the jury so informed, it would be much more capable of ascertaining the intent and state of mind with which defendants acted in obtaining the warrant for the arrest of plaintiffs as having contributed to their son's delinquency in refusing the officers the taking of his custody without a warrant. We believe, therefore, that had the requested instruction been given, such statement of the law, when considered with the experience of Officers Adcock and Osborn and the indoctrination of Officer Borth, would have a direct bearing on the jury's determination with respect to the question of malice." The requested instruction was based

on the decision of this court in *Jackson* v. *Superior Court*, 98 Cal.App.2d 183 [219 P.2d 879], in which prohibition was granted to prevent the district attorney of Merced County from proceeding with a prosecution under an information charging the Jacksons (plaintiffs here) with obstructing an officer in his attempt to arrest their son. Our reasons for granting the writ were that the attempted arrest was not valid because it was made without a warrant, was based upon an offense committed more than a day before, there was no reason why the arrest was not made at the time the officer saw the misdemeanor committed, and the parents' resistance was not unreasonable. The officers subsequently obtained warrants under which the Jacksons were arrested, which arrests constitute the basis of their suits for false arrest and imprisonment.

However, as pointed out by respondents, it is expressly conceded in plaintiffs' brief that plaintiffs ''were placed under arrest pursuant to warrants.'' Consequently, an instruction in the form requested by plaintiffs could only serve to mislead and confuse the jury and it was properly refused by the court. So far as plaintiffs' contention that it would have a direct bearing on the jury's determination with respect to the question of malice it is sufficient to state that the requested instruction did not purport to deal with the subject of malice. Furthermore, the jury were instructed fully on the subject of malice and were also instructed at the request of plaintiffs:

''You are hereby instructed that an arrest pursuant to a warrant regular on its face, does not relieve the arresting officers from liability in the event that the issuance of said warrant was procured through their mistake or malicious motive.''

■ Plaintiffs' second contention is that the court erred in submitting to the jury the issue of the regularity of the warrant upon its face because as a matter of law the warrant issued from a court without jurisdiction. They contend in effect that the trial court should have instructed the jury that the warrant was irregular on its face. However, as defendants point out, no such instruction was offered by plaintiffs, but, on the contrary, the defendants offered and the court gave the instruction last hereinbefore quoted, which assumes that the warrant was in fact regular and presented to the jury the issue of whether or not the warrant was procured by defendants through mistake or malicious motive.

So it is evident that the contention now made by plaintiffs' present counsel was not relied upon by the counsel who represented plaintiffs at the trial of the action.

Plaintiffs point out that the warrant for their arrest was issued by a justice of the peace on the basis of a complaint charging a violation of section 702 of the Welfare and Institutions Code, which section provides, in part, that "The Juvenile Court shall have original jurisdiction over all misdemeanors defined in this section. . . ." From this, plaintiffs suggest that perhaps only the juvenile court has jurisdiction in matters under this statute, because there appears to be no direct authority authorizing either that the misdemeanor complaint be brought in a justice's court, or that such a court could hold a preliminary examination pursuant to such a complaint. Penal Code, section 860, providing that "Nothing in this section shall affect the jurisdiction or procedure of the Superior Court sitting as a Juvenile Court," is cited to show lack of jurisdiction in the justice's court. Two opinions of the attorney general, 8 Ops. AG Cal. 167 and 289, are cited, one suggesting that complaint *should* be filed in the juvenile court in the first instance, and the other that preliminary examinations are necessary in the face of a not guilty plea. The second opinion states in part:

"I am of the further view that the Juvenile Court does not have exclusive jurisdiction to conduct preliminary examinations but that jurisdiction in such cases is shared with other magistrates and that charges brought under Section 702 can be brought before any magistrate and, in such cases, preliminary examination is required except, as previously stated, where the accused pleads guilty before the Juvenile Court on charges brought before it in the first instance.

"While the courts of this State have not directly passed upon the right of a magistrate, other than the Juvenile Court, to hold preliminary examinations on charges brought under Section 702, nevertheless it has been the practice to bring these charges before the Justice's Court, sitting as a magistrate, and to hold a preliminary examination, certifying the accused to the Juvenile Court. *Butler* v. *Hastings* (1934), 139 Cal.App. 641 [34 P.2d 751]; *People* v. *Superior Court* (1930), 104 Cal.App. 276 [285 P. 871]; *People* v. *Giminiani* (1924), 70 Cal.App. 195 [232 P. 993]; and *Edington* v. *Superior Court* (1912), 18 Cal.App. 739 [124 P. 450, 128 P. 338]."

The opinion quoted from was rendered in 1946, prior to the 1951 amendment of section 813 of the Penal Code. The section then read:

"When Warrant May Issue: (Duty of Magistrate) If the Magistrate is satisfied therefrom that the offense complained of has been committed and that there is reasonable ground to believe that the defendant has committed it, he must issue a warrant of arrest."

In 1951 the section was amended to read:

"Warrant: When to be Issued: When a complaint is filed with a Magistrate charging a public offense originally triable in the Superior Court of the county in which he sits, if such Magistrate is satisfied from the complaint that the offense complained of has been committed and that there is reasonable ground to believe that the defendant has committed it, he must issue a warrant for the arrest of the defendant."

Plaintiffs argue that the change to Penal Code section 813 made by the Legislature in 1951 by adding reference to "public offense originally triable in the Superior Court" must be held to increase the authority of a magistrate so as to permit him to issue warrants in a new class of cases, such as violation of Welfare and Institutions Code, section 702, because, say plaintiffs, if this view is not taken, the change in statutory language has no significance, and, therefore, at the time this warrant was issued, the magistrate issuing it had no authority to do so. We do not agree with this contention of plaintiffs. As we view the matter, the Legislature, in adding the 1951 amendment to section 813, was not making any change in the law but was seeking to clarify the section and to make it express in clearer terms what must have been the intention of the Legislature when it was originally enacted.

Defendants in answering plaintiffs' second contention make the further argument that the jurisdiction of Judge Walter to issue the warrant and the sufficiency of the prior proceedings are not material, because the question is not whether actual authority existed, but only whether apparent authority existed—was there anything in the warrant constituting fair warning that it had been issued without authority, that is, was it irregular on its face, citing Civil Code section 43.5 (a), *Pankewicz* v. *Jess*, 27 Cal.App. 340 [149 P. 997], *Malone* v. *Carey*, 17 Cal.App.2d 505 [62 P.2d 166], *Barrier* v. *Alex-*

*ander,* 100 Cal.App.2d 497 [224 P.2d 436], *Downey* v. *Allen,* 36 Cal.App.2d 269 [97 P.2d 515].

Section 43.5(a) of the Civil Code provides: ''There shall be no liability on the part of and no cause of action shall arise against any peace officer who makes an arrest pursuant to a warrant of arrest regular upon its face if such peace officer in making the arrest acts without malice and in the reasonable belief that the person arrested is the one referred to in the warrant.''

In *Pankewicz* v. *Jess, supra,* the court said at page 342: ''An officer whose duty it is to serve process is bound to serve the same when such process is regular on its face. Process is said to be regular on its face when it proceeds from a court, officer, or body having authority of law to issue process of that nature, and which is legal in form, and contains nothing to notify or fairly apprise any one that it is issued without authority. . . .''

And in *Downey* v. *Allen, supra,* at page 273, it is stated: ''. . . A peace officer is not liable for the service of a warrant which is valid upon its face, irrespective of any defects in the proceedings leading up to the issuance thereof.''

■ We are convinced that the justice of the peace had jurisdiction to issue the warrant of arrest and we are convinced also that the warrant was regular on its face. Furthermore, Judge Walter, the justice of the peace, and defendant Adcock were permitted to testify without objection that all proceedings for the proper issuance of the warrant had taken place prior to its issuance. Indeed, at the trial there was no contention that the warrant was not regular on its face.

Respondents go beyond the scope of appellants' brief and argue that plaintiffs' position on appeal is opposite to the theory upon which the cases were tried, so the judgments should be affirmed because both issues presented on appeal are being raised for the first time. As an additional reason for affirmance defendants urge that the complaints did not state a cause of action and the defects therein were not cured by trial. Defendants support the first of these contentions by references to counsel's statements during the trial and the instructions offered by appellants. As for the alleged insufficiency of the complaints to state a cause of action, defendants state that they pointed this defect out at every stage, and, further, instead of trying to obtain a reversal

for pleading defect, they are urging affirmance because of pleading defect.

While these contentions of defendants have substantial merit, we deem it unnecessary to discuss them, as we are convinced that the judgment should be affirmed on the merits. There is ample evidence to support the implied finding of the jury that defendants, as officers of law, in good faith and without malice sought and obtained a warrant for the arrest of plaintiffs, and that said warrant was regularly issued and was valid on its face. The case was fully and fairly tried, the jury was correctly instructed as to the law applicable to the case, and no prejudicial error was committed.

The judgments are affirmed.

Van Dyke, P. J., and Peek, J., concurred.