[Civ. No. 7101. Third Dist. June 13, 1945.]

VIRGIA BENWAY, Appellant, v. ROY W. BENWAY, Respondent.

H. K. Landram for Appellant.

L. M. Linneman for Respondent.

ADAMS, P. J.—Plaintiff, Virgia Benway, brought this action in Merced County, setting up in her complaint that she had, on April 8, 1942, obtained a judgment against defendant in the State of Washington, in the sum of $3,991.66, no part of which had been paid. Defendant filed an answer denying the allegations of the complaint and setting up as a separate defense that the Washington court did not have jurisdiction over the person of defendant or any property belonging to him, and that the judgment entered by said court was without jurisdiction.

The cause coming on for trial, plaintiff's counsel introduced in evidence a copy of the judgment roll in the Washington action. That record shows that on October 24, 1927, Roy W. Benway filed in the Superior Court of Spokane County, Washington, a complaint in an action for divorce against Virgia Benway, it being alleged therein that there was no community property belonging to the parties by reason of the fact that prior to the commencement of the action plaintiff had turned over all property to defendant. It was further alleged that there were five minor children of the marriage, the youngest, a girl, being three years of age. Defendant filed an answer and cross-complaint, in which plaintiff's allegations of cruelty were denied, and cruelty on the part of cross-defendant toward cross-plaintiff was alleged. It was further alleged that the parties had entered into an oral agreement which would be reduced to writing later, which provided for division of property and for alimony and the custody of the children of the marriage. It was prayed that a divorce be granted to cross-complainant, that the agreement be approved by the court and that cross-defendant be compelled to pay the sums therein agreed upon as alimony and the property be awarded as therein provided. Cross-defendant in a reply ad-

mitted the making of the agreement but denied the other allegations of the cross-complaint. Upon trial of the action the written agreement of the parties was filed with the court, the presently pertinent portions thereof being an agreement on the part of Roy W. Benway that he should pay to Virgia Benway the sum of $25 per month until the further order of the court, and that to secure the first ten payments he should deposit the sum of $250 with the clerk of the court. It was further agreed that Mrs. Benway should have the custody of four of the minor children then in her custody, but that should she become unable to support them the three minor boys might be turned over to Benway, at his expense, but that, in such event, the rights of Mrs. Benway to the $25 per month should not be prejudiced. On the same day Benway deposited $250 with the clerk of the court, together with written instructions to the clerk that pursuant to an agreement between the parties plaintiff should pay $25 per month into the registry of the court, and instructing the clerk that upon failure of Benway to make such monthly payment, the clerk should pay to Mrs. Benway, out of the amount deposited, the sum of $25 per month in lieu thereof.

At the conclusion of the trial the court made and filed its findings of fact and conclusions of law which recited that plaintiff (cross-defendant) had been guilty of cruel treatment toward defendant (cross-complainant) and that defendant was entitled to a divorce from plaintiff; also ''That there is no community property belonging to plaintiff and defendant; that all property rights were settled between them prior to the commencement of this action; that the custody of the children belonging to the aforesaid parties has likewise been adjusted between the parties themselves; that the agreement settling the property rights and custody of the children of the parties is approved and made a part hereof.'' These findings were ''approved as to form'' by plaintiff's attorneys. On the same day, February 17, 1928, the court filed its ''Interlocutory Order,'' which decreed that defendant was entitled to an interlocutory decree of divorce but made no mention of the custody of children or the payment of alimony. Upon the expiration of six months a final decree was made and entered granting an absolute divorce to Mrs. Benway, but making no mention of custody, alimony or support money.

On January 14, 1942, Mrs. Benway executed, and on April 2, 1942, filed in the Washington court a "Petition for Modification of Judgment Nunc Pro Tunc," in which she recited the facts hereinbefore set forth, and further recited that she had surrendered to plaintiff the care of the three minor sons of the parties, but had maintained and supported the minor daughter; and she prayed that the decree of divorce be corrected by an order *nunc pro tunc* as of the date thereof to provide for and set forth the intents and wishes of the parties to the property settlement as set forth in the findings of fact. She also filed a petition to determine the amount of alimony due from Benway. On April 6, 1942, the court made and entered a "Nunc Pro Tunc Order Correcting Interlocutory Decree," which recited that Benway had been given notice by service upon his former attorney and that it appeared from an inspection of the records that the order given and made on February 17, 1928, "was entered in such a way as not to set forth correctly the order of this court as then made in the premises, and that the judgment of this court should incorporate the additional finding of the court as hereinafter set forth so as to conform to the facts and speak the truth." It was then ordered that the finding of the court "That the agreement settling the property rights and custody of the children of the parties is approved and made a part hereof," be incorporated in the decree and made a part thereof. On April 8, 1942, the court made and entered a "Judgment for Alimony Due," which recited that the total sum due to date, after deducting $250 paid by Benway, was $3,991.66.

After introducing the foregoing record in the case before us plaintiff rested.

Defendant then took the stand and testified that he had not been in the State of Washington since 1928, that no "due process" had been served upon him in that proceeding, that he had no attorney in the divorce proceeding who had authority to represent him after the final decree was entered in Washington, that three of the children had been with him and only one with the mother. No other evidence was offered. The trial court filed a memorandum opinion in which it stated that the *nunc pro tunc* order and the judgment which followed it were null and void because Benway was not served personally in the State of Washington, that the entry of the "per-

'sonal" judgment in 1942 was not a proper exercise of the "continuing jurisdiction" of the Washington court, and that "the process of changing the judgment in rem, which was entered in 1928, into a judgment in personam in 1942, is void notwithstanding the fact that the same was entered nunc pro tunc for the purpose of making a legitimate correction in the judgment as originally entered." Findings were then filed reciting that Benway was not served in Washington, and that the Washington court had no jurisdiction over his person or property, and, as a conclusion of law therefrom, that plaintiff take nothing. Judgment was entered for defendant, a motion for a new trial was denied, and this appeal followed.

Appellant states that the question involved is whether the order of the Washington court correcting the interlocutory and final decrees of divorce *nunc pro tunc* was valid. Respondent argues that it was invalid because of lack of personal service of notice upon him to appear and defend against the petition for correction of the judgment *nunc pro tunc*. He also argues that the original judgment was, by the *nunc pro tunc* correction, changed from a judgment in rem to a judgment in personam, and that this could not be done without serving him personally in the State of Washington; and that the judgment for the unpaid alimony was a new and personal judgment which was not based on personal service.

■ We are of the opinion that the order of the Washington court, made in 1942, correcting the decrees entered in 1928 *nunc pro tunc* as of their original dates was valid. The great weight of authority is to the effect that a court may, at any time, and with or without notice, or on its own motion, correct a judgment by a *nunc pro tunc* order so as to make the judgment as entered conform to the *judicial decision* actually made. (See *Takekawa* v. *Hole,* 170 Cal. 323 [149 P. 593]; *Dutton Dredge Co.* v. *Goss,* 77 Cal.App. 727, 732 [247 P. 594]; *Goatman* v. *Fuller,* 191 Cal. 245, 248 [216 P. 35]; *Kaufman* v. *Shain,* 111 Cal. 16, 23 [43 P. 393, 52 Am.St.Rep. 139]; *Carter* v. *J. W. Silver Trucking Co.,* 4 Cal.2d 198, 204-205 [47 P.2d 733]; *Carpenter* v. *Pacific Mutual Life Insurance Co.,* 14 Cal.2d 704 [96 P.2d 796]; *Scamman* v. *Bonslett,* 118 Cal. 93, 97 [50 P. 272, 62 Am.St.Rep. 226]; *E. Clemens Horst Co.* v. *Federal etc. Co.,* 22 Cal.App.2d 548 [71 P.2d 599]; *Crim* v. *Kessing,* 89 Cal. 478, 486 [26 P. 1074, 23 Am.

St.Rep. 491]; *Estate of Soboslay*, 4 Cal.2d 177, 179 [47 P.2d 714]; *McKannay* v. *McKannay*, 68 Cal.App. 709, 712 [230 P. 218]; 14 Cal.Jur. § 40, p. 931; *Pappas* v. *Taylor*, 138 Wash. 31 [244 P. 393, 394]; *O'Bryan* v. *American Inv. & Imp. Co.*, 50 Wash. 371 [97 P. 241, 242]. Also see notes in 10 A.L.R. 526, 67 A.L.R. 828, and 126 A.L.R. 956.)

 As above stated, the Washington court recited in its findings of fact and conclusions of law that the parties had entered into an agreement settling their property rights and custody of their children, and that such agreement was approved and made a part thereof. This constituted the decision of the court. Section 367, Remington's Revised Statutes of Washington, which is comparable to section 632 of the California Code of Civil Procedure, provides: "Upon the trial of an issue of fact by the court, its decisions shall be given in writing and filed with the clerk. In giving the decision the facts found and the conclusions of law shall be separately stated. Judgment upon the decision shall be entered accordingly."

 Findings and conclusions made and filed pursuant to such a statute constitute the decision of the court, and the entry of judgment thereon is a ministerial act to which the signature of the judge gives no additional validity. (See *Crim* v. *Kessing, supra,* at p. 488; *Takekawa* v. *Hole, supra,* at p. 324; *In re Cook,* 77 Cal. 220, 227 [17 P. 923, 19 P. 431, 11 Am.St.Rep. 267, 1 L.R.A. 567]; 14 Cal.Jur. § 71, p. 994.)

 While a court may not correct a judicial error by an order so entered, errors due to the failure of a record to speak the truth or to conform to the decision rendered, and clerical misprisions generally, of which the record affords the evidence, may be corrected at any time by the court upon its own motion or upon motion of an interested party, with or without notice. (14 Cal.Jur. 1007.)

 Also a clerical error is not necessarily one made by a clerk, but such error may be that of the court or judge. In *Estate of Goldberg,* 10 Cal.2d 709 [76 P.2d 508], the court had for consideration the validity of an order correcting a decree of distribution *nunc pro tunc* as of the date of the original decree entered thirty-five years previously. It first stated the general rule that when on the face of a record it appears that a clerical error has been committed and carried into the judg-

ment or decree the court has the power to correct such error; and as to what constitutes a clerical error within such rule is stated, page 715, that while in its original and literal significance, a clerical error is one made by a clerk or some subordinate agent, latterly the meaning has been broadened and extended so that now it may include an error that may have been made by the judge or court. It also said, page 717, that as to such clerical errors, when same are apparent upon the face of the record, no time limit exists as far as the right to make the correction is concerned, and that the trial court has full power to determine whether the error was clerical or judicial in character, citing *Harman* v. *Cabaniss,* 207 Cal. 60 [276 P. 569]. *Carpenter* v. *Pacific Mutual Life Insurance Company, supra,* is to the same effect.

Also in *Kohlstedt* v. *Hauseur,* 24 Cal.App.2d 60 [74 P.2d 314], where the power of the court to amend a judgment *nunc pro tunc* on an ex parte application was in question, the court said that the superior court has inherent power to correct its records so as to make them speak the truth, regardless of the lapse of time, even though the misprision was that of the court; and that such correction may be made ex parte and of the court's own motion. It also said that it is for the judge who made the original decision to decide whether the judgment as written expresses his decision, and that in so acting he is exercising one of the functions of his judicial office, citing *Kaufman* v. *Shain, supra,* and *Kowalsky* v. *Nicholson,* 23 Cal. App. 160 [137 P. 607]. It also quoted from *Livesay* v. *Deibert,* 3 Cal.App.2d 140, 147 [39 P.2d 466], where the court said that it was for the trial judge to determine whether the order was all that he intended it to be; that if the mistake was clerical it could be corrected; that it must be presumed that he found it to be his own clerical error; that the facts were within his knowledge and that he had a right to rely upon his own memory; and that the court retained jurisdiction to amend the original order to correct clerical errors therein.

In *Haynes* v. *Los Angeles R. R. Corp.,* 80 Cal.App. 776 [252 P. 1072], the court said, page 781, that the court having made the *nunc pro tunc* order, every intendment is in favor of its regularity and validity. And in *Crim* v. *Kessing, supra,* it was said, page 486, that, when made, a record so corrected, and the order making the correction, are conclusive upon any

other court in which the record is offered in evidence. (Also see 14 Cal.Jur. 994 and cases cited in 10 A.L.R. 624-625.)

 There is no merit in respondent's argument that the *nunc pro tunc* order made by the Washington court had the effect of changing a judgment in rem to one in personam, without personal service upon respondent in the State of Washington. Respondent himself instituted the divorce proceeding, appeared in answer to appellant's cross-complaint and made no denial of the allegation therein that the parties had entered into an agreement as to property, alimony and the custody of the children. He was well aware of the findings of the court made and filed, same having been approved as to form by his counsel. His awareness of his obligation to pay to Mrs. Benway the $25 provided by the agreement is evidenced by his deposit of $250 with the clerk of the court in part payment of this obligation. The decision of the trial court was made when the findings were filed, and, as we have held, the *nunc pro tunc* order did not create any new obligation on his part but merely corrected the clerical error of the court in failing to carry same into the decrees. *De la Montanya* v. *De la Montanya,* 112 Cal. 101 [44 P. 345, 53 Am.St. Rep. 165, 32 L.R.A. 82], and similar cases cited by respondent have no application.

 Nor did the hearing at which the Washington court determined the amount due appellant under the decision and agreement constitute a new or independent proceeding. It was merely auxiliary to the divorce action, and a proper exercise of the continuing jurisdiction of the divorce court. It is not contended by respondent that he ever paid more on account of his obligation than the $250 paid into the registry of the court, and the determination of the amount remaining unpaid was a mere matter of computation.

 Even if service of notice of these proceedings was necessary, service upon respondent's attorney of record was sufficient. (*Reynolds* v. *Reynolds,* 21 Cal.2d 580, 583-585 [134 P.2d 251]; *Shibley* v. *Superior Court,* 202 Cal. 738 [262 P. 332]; *Russ* v. *Russ,* 68 Cal.App.2d 400, 406 [156 P.2d 767]; *Olcott* v. *Superior Court,* 68 Cal.App.2d 603, 606 [157 P. 2d 36]; *State* v. *Superior Court,* 164 Wash. 618 [3 P.2d 1098, 1099, 78 A.L.R. 366]; *In re Force,* 113 Wash. 151 [193 P. 698].)

The judgment is reversed and the trial court is directed to enter judgment for plaintiff as prayed.

Thompson, J., and Peek, J., concurred.