[Civ. No. 16704. First Dist., Div. Two. May 21, 1956.]

CONSTANCE M. UHL, Appellant, v. ELEANOR JOHNSON et al., Respondents.

[Civ. No. 16705. First Dist., Div. Two. May 21, 1956.]

HELEN B. UHL, Respondent, v. AMERICAN TRUST COMPANY (a Corporation) et al., Defendants; CONSTANCE M. UHL, Appellant.

Jonathan H. Rowell and Louis S. Katz for Appellant.

H. Ward Dawson for Respondents.

DOOLING, J.—In this consolidated appeal appellant Constance M. Uhl appeals from an order of the Superior Court of San Mateo County amending a judgment *nunc pro tunc* in action Number 43838 and from an order of dismissal as to action Number 59072.

One of the respondents, Helen B. Uhl, mother of the appellant, filed action Number 43838 against appellant and others. The purpose of this suit was to determine the ownership of and rights to certain securities and a piece of real property consisting of a house and lot at 444 Villa Terrace, San Mateo, California. On June 8, 1950, the trial judge signed findings and conclusions in this matter. Finding 151 recites: "That plaintiff's intent was to create a joint tenancy in trust in such real and personal properties in herself and her said daughter with the profits and dividends therefrom to be paid to the plaintiff and said daughter in proportions as to the shares of stock set forth in these Findings of Fact, and of equal shares in the real properties to be held by them in such tenancy for their joint lives thereafter, upon the death of either of them the title of said properties revert to the survivor." The trial court concluded in part: "That the properties referred to in the foregoing findings are held in joint tenancy in trust by Helen B. Uhl and defendant Constance M. Uhl for their joint benefit during their joint lifetime, and with right of survivorship." Judgment for defendants (one of whom was appellant Constance M. Uhl) was entered May 29, 1951. The court ordered that the securities were

held in joint tenancy between respondent, Helen B. Uhl and appellant and that:

## "II

"That certain parcel of improved real property situated in the City of San Mateo, County of San Mateo, State of California, be and the same is hereby declared to be held co- in ~~joint~~ tenancy between Plaintiff, HELEN B. UHL, and Defendant, CONSTANCE M. UHL, and which said property is more particularly described as follows: . . ."

On October 23, 1952, appellant filed an "Amended Complaint To Partition Cotenancy And For Accounting Or, In The Alternative, To Re-establish Joint Tenancy" against respondents Eleanor Johnson and Helen B. Uhl. In this complaint appellant asserted claims to the same securities and real property that had been the subject of the prior action. She alleged that on the 19th day of April, 1951, respondent Uhl, without advising appellant thereof, transferred an undivided one-half (½) interest in the real property to respondent Johnson and on April 12, 1951, transferred an undivided one-half interest in the securities to this same party. Appellant further alleged that the judgment in the prior action was unlawfully altered by a person or persons unknown to her to read that the real property was held in cotenancy rather than joint tenancy; that the parties entered into an agreement on or about the 27th day of May, 1951, providing that the real property "shall be held by First and Second Parties in joint tenancy until further agreement of the parties"; and that after appellant signed this agreement it was altered without her authority, consent or knowledge to provide that the real property should be held in cotenancy. Appellant prayed for a partition of the real property or if this could not be had then for a sale of the premises and a division of the proceeds between the parties according to their respective rights and for certain money judgments against respondents in connection with this real property; that the real property be declared to be held in joint tenancy, in trust for the joint benefit of appellant and respondent Uhl during their joint lifetime; and that the securities be declared to be held in joint tenancy, in trust for the joint benefit of appellant and respondent Uhl during their joint lifetime.

The only testimony taken at the trial of the second action prior to the order of dismisal was that of Arthur F. Edwards,

the attorney who had represented appellant in the prior action and who filed the original complaint in the second action. (He was substituted out of the case shortly after this complaint was filed and stated that he thereafter had nothing further to do with it.) Mr. Edwards testified that there was a good deal of altercation and argument between the parties even after the findings of fact and conclusions of law were drawn; that subsequently the parties got together and agreed to a property settlement to the effect that the property should be divided equally beween them; that he drew up articles of agreement embodying this understanding. The provision in that agreement around which the present controversy revolves is paragraph VI which follows in part:

"The parties hereto agree that that certain parcel of real property located in the City of San Mateo . . . shall be held
H B U  CMU  co
by First and Second Parties in ~~joint~~ tenancy until further agreement of the parties, . . ."

(Appellant was First Party and respondent Second Party to this agreement. Respondent Eleanor Johnson to whom an interest in the property had been transferred on April 19, 1951, was also a party.) Mr. Edwards testified to the circumstances of the change in this paragraph. He stated that the original agreement providing for the joint tenancy was first signed by appellant and another party and then sent to his office and signed by him. (During this period appellant was living in Santa Cruz and Edwards' office was located in San Francisco.) He then endeavored to get respondents Helen Uhl and Eleanor Johnson to sign the agreement but they would not agree to the joint tenancy provision preferring to have the property put in cotenancy. He discussed the matter over a period of time with appellant via the telephone and she finally agreed to a cotenancy provision. He did not recall when respondent Helen Uhl made the interlineation or initialed it but he did recall that as far as the final document was concerned he added appellant's initials to the interlineation agreeing to the cotenancy rather than to the joint tenancy according to the agreement of the parties. He testified that he initialed this change for appellant with her knowledge and acquiescence.

Mr. Edwards testified that in a previous attempt to settle this matter (before the May agreement) he prepared a trust agreement whereby all the property was to be put in trust for the mutual benefit of appellant and respondent Helen

Uhl but that appellant would not agree to such a proposal as she wished to have her half of the property free and clear. He stated that he knew that the findings of fact and conclusions of law purported to put the matter in joint tenancy in trust, but that in view of the subsequent agreement of the parties and with the acquiescence of Judge Cotton there was no joint tenancy in trust set up. He further testified that in drawing up the judgment he deleted the part as to the trust and that the trial judge was aware of the agreement and the subsequent judgment which did not put the property in joint tenancy in trust.

The judgment entered May 29, 1951, was designed to follow the Articles of Agreement of May 27, 1951. There is no testimony as to when the word "joint" referring to the ownership of the real property was crossed out and "co" interlined above it in paragraph II of the judgment. However, Mr. Edwards did testify that there was no alteration in the judgment after it was prepared in his office up to the time it was presented to the trial judge. The judgment as originally entered did not contain the words "in trust."

On re-cross examination Mr. Edwards was asked:

"Q. Do you recall in the agreement that the real property was to be sold upon the death of Helen B. Uhl and not before and the proceeds divided equally between Miss Constance Uhl and Helen B. Uhl, unless Miss Constance Uhl desired to live in there, and she could live in there to her death, at which time the proceeds would be divided between her estate and Miss Uhl, and it was a fifty-fifty relationship to be carried out at all times?"

He answered that he thought generally that this was the understanding but that it was a little vague in his mind. Respondents' attorney then moved that the court "order that the property may be put in trust to provide a home for Helen B. Uhl so long as she lives, and the home to remain as such for as long as Constance Uhl lives, if she desires to live there, and any time after the death of Helen B. Uhl if the property is desired to be sold by Constance Uhl the proceeds will be divided one-half and one-half."

The record then shows the following:

"The Court: I am going to grant the motion. I believe that is the effect of all these agreements and judgments and everything. I am going to grant that motion.

"Mr. Katz: Then, the motion is the property will be put back in joint tenancy in trust, is that right?

"Mr. Dawson: In trust, and a home provided for these two people and the proceeds divided one-half and one-half upon the death of Miss Uhl if Miss Constance Uhl desires, and as to all those matters, Your Honor, may we have a motion for res adjudicata granted to all?

"The Court: Yes, your motion to strike the testimony is granted and all of this is res adjudicata.

"Mr. Katz: Your Honor, we have not put on our testimony.

"The Court: Well, that is the order anyway."

The trial court thereafter on September 24, 1954, entered "Judgment Nunc Pro Tunc" ordering that the judgment of May 29, 1951, be "corrected to conform to the actual judgment announced and rendered by the court by adding to the said judgment . . . the words 'co-tenancy in trust,' so that paragraph II shall read as follows:

" 'That certain parcel of improved real property situated in the City of San Mateo, . . . is hereby declared to be held in co-tenancy in trust between Plaintiff, Helen B. Uhl, and Defendant, Constance M. Uhl.' . . ."

(In the "Direction For Entry Nunc Pro Tunc" filed on the same day the court stated that the original judgment read that the real property was to be held in joint tenancy.) It was also ordered "that the Articles of Agreement dated May 27th, 1951, by and between Constance M. Uhl, Helen B. Uhl, Eleanor Johnson, . . . be filed herein." This judgment stated that the written judgment previously filed and entered was not a correct memorial of the judgment as rendered and announced by the court in that the words "in trust" were omitted and that the order that the articles of agreement of May 27th, 1951, be filed in the action was omitted. These omissions were stated to have been made "through clerical error and/or clerical mistake and/or clerical omission, . . . inadvertently . . ."

At the same time that the "Judgment Nunc Pro Tunc" was filed the court also filed a "Supplementary Order Concerning Trust Provisions Of Judgment" setting forth specifically the terms of the trust as to the real property. It was ordered that appellant and respondent Helen B. Uhl convey to a trustee all their right, title and interest in and to the real property ". . . said trustee to hold said property in trust until the death of Helen B. Uhl, or as long as Helen B. Uhl shall continue to reside on said premises, and during her residence thereon pay the insurance, taxes and upkeep thereof

and thereon. Upon the death of Helen B. Uhl, or her vacating said premises, said trustee to continue to hold said property as a residence for Constance M. Uhl if, and only if, she shall desire to live therein. Upon the death of Constance M. Uhl, or upon her earlier decision not to live in said premises, same shall be sold and the proceeds to be divided one-half to Helen B. Uhl or her estate and one-half to Constance M. Uhl or her estate. Constance M. Uhl to pay the insurance, taxes and cost of upkeep of said premises in the event she lives therein.''

At the same time the ''Judgment Nunc Pro Tunc'' was entered the trial court dismissed action Number 59072 on the ground of res adjudicata.

In discussing the propriety of the *nunc pro tunc* order respondents first assert that no appeal will lie from that order. They base this argument on the theory that since the judgment was entered as of May 29, 1951, it has long since become final. Respondents are in error in this contention. The appeal is not taken from the original judgment of May 29, 1951, but from the order of September 24, 1954, correcting or amending that judgment. (*Phillips* v. *Phillips,* 41 Cal.2d 869, 875 [264 P.2d 926]; *Rosslow* v. *Janssen,* 136 Cal.App. 467, 470-471 [29 P.2d 287].)

The rule is generally stated that a court may, at any time, and with or without notice, or on its own motion, correct a judgment by a *nunc pro tunc* order so as to make the judgment as entered conform to the judicial decision actually made. (*Benway* v. *Benway,* 69 Cal.App.2d 574 [159 P.2d 682].)

Thus a trial court has jurisdiction to correct mistakes in its orders and records which are not actually the result of the exercise of judgment, but where the error is inherently judicial rather than clerical or inadvertent, the court has no power to amend its decision. (*Estate of Burnett,* 11 Cal.2d 259 [79 P.2d 89]; *Key System Transit Lines* v. *Superior Court,* 36 Cal.2d 184 [222 P.2d 867].) Thus the question here presented is whether the change in the judgment ordered by the trial court constituted the correction of a clerical or a judicial error. Both the findings and the conclusions recited that the real property should be held by the parties in joint tenancy with the right of survivorship; the articles of agreement of May 27, 1951, recited that it should be held by

H B U CMU co

appellant and respondent Uhl ''in ~~joint~~ tenancy until further

agreement of the parties . . ."; the judgment recited that it should be held "in ~~joint~~ <sup>co-</sup>tenancy" between appellant and respondent Uhl. ▪ The effect of the *nunc pro tunc* order with its "in trust" provision seems to be a disposition of the property inconsistent with and different from what was contemplated in the findings, conclusions, agreement of the parties, or original judgment. There is nothing in the record to indicate that this "in trust" provision was part of the original judgment as rendered and that it was merely through clerical error that it was omitted from the judgment. Rather it would seem that the trial judge after listening to the testimony of appellant's former attorney on the trial of the second action reviewed the matter again and then came to the conclusion that the trust provision would express "the effect of all these agreements and judgments and everything." It is obvious that the trial judge attempted to correct a judicial error in making the *nunc pro tunc* order. It is true that the court recited that the words "in trust" and the order that the Articles of Agreement be filed were omitted from the original judgment because of "clerical error and/or clerical mistake and/or clerical omission, made inadvertently." However, the portion of the record quoted above demonstrates that the court attempted to redecide the case on his then understanding after hearing one witness and without allowing appellant to produce her full evidence. This was an attempt to readjudicate the case under the pretext of correcting a clerical error and without a full hearing.

Since the *nunc pro tunc* order was invalid because it constituted a judicial rather than a clerical correction of the judgment the trial court was in error in dismissing the second action on the ground that the issues presented by it had been determined in the prior action, and was also in error in denying appellant the right to produce her evidence in support of her complaint in the second action.

Order amending judgment *nunc pro tunc* in action Number 43838 and order dismissing action Number 59072 reversed.

Nourse, P. J., and Kaufman, J., concurred.