[Civ. No. 22509.   Second Dist., Div. Two.   Feb. 18, 1958.]

LILLIAN LORENE SMITH, Appellant, v. MAURICE A. SMITH, Respondent.

Low & Stone for Appellant.

McCormick & Norris for Respondent.

FOX, P. J.—This is an appeal from an order denying plaintiff's motion to change a minute order and judgment based thereon on the ground that through a clerical error the minutes of the court failed to correctly and fully reflect the order made by the court.

Plaintiff filed a suit for divorce on July 30, 1953. Thereafter her husband, who was not represented by counsel, signed

a property settlement agreement which had been prepared by plaintiff's attorney. It provided, *inter alia,* that defendant pay plaintiff $150 per month alimony for a period of three years and that beginning August 1, 1956, he pay her $1.00 per month thereafter. The agreement further provided, in paragraph 13, that it could be incorporated in any decree that might be rendered in the divorce action. The case was heard as a default before Judge McCoy on September 25, 1953. During the course of the hearing the property settlement agreement was received in evidence. At the conclusion of the testimony the judge announced his decision, according to the clerk's minutes, as follows: "The court finds the plaintiff is entitled to an interlocutory decree of divorce. The property settlement agreement is approved."

Plaintiff's attorney later prepared a proposed interlocutory decree on one of the printed forms, typing in the following: "The property settlement agreement is approved *and incorporated into the decree and the parties are ordered to carry out the executory provisions thereof.* The clerk is ordered to enter this decree." Before the judgment was signed by the judge, the italicized portion was stricken by running a line through it. On motion of the plaintiff a final decree of divorce was entered on October 14, 1954.

Nothing further appears until September 24, 1956, when an order to show cause *re* modification seeking alimony of $250 per month, came on for hearing. Defendant moved to dismiss for lack of jurisdiction. The matter went off calendar pending a clarification of the previously mentioned minute order. Thereafter plaintiff made a motion to change the minute order and the judgment made in reliance thereon. The substance of plaintiff's motion was that the minute order and judgment should be amended to incorporate the property settlement agreement, providing specifically for $150 per month alimony for the first three years, $1.00 per month thereafter until plaintiff remarried or until further order of the court, and to restore plaintiff's maiden name. Plaintiff's motion was supported by her own affidavit and affidavits by her daughter and her attorney. These affidavits were in substance that following the conclusion of the testimony a conversation took place between the judge and plaintiff's attorney to the effect that the attorney would prepare the decree when he got back to his office and that it would include a provision incorporating the property settlement agreement into the decree and ordering the parties to carry out its ex-

ecutory provisions and provide for the restoration of plaintiff's maiden name. Defendant filed no affidavit. The judge had no independent recollection of the circumstances here involved. Inquiry from the court reporter then working in Judge McCoy's department revealed that it was her practice to record for future reference, but not necessarily to be written up as a part of the transcript, any additional comments that may be made as to matters incidental to the decree; that she had examined her notes and found no colloquy between court and counsel. The court denied plaintiff's motion in general terms.

Plaintiff's contentions are basically two: (1) that the court did not pass upon the question as to whether there was a clerical error on the ground that it lacked jurisdiction so to do; and (2) that the record and affidavits compel the conclusion that the complete decision of Judge McCoy was not fully recorded in the minutes and that there is no support for an implied finding of fact to the contrary.

We start with the well settled rule that the court has the power and the duty to correct its records "so as to make them conform to the judicial decisions actually made, and this regardless of the lapse of time." (*Meyer* v. *Porath,* 113 Cal.App.2d 808, 811 [248 P.2d 984]; *Benway* v. *Benway,* 69 Cal.App.2d 574, 579 [159 P.2d 682].) "The provisions of section 473 of the Code of Civil Procedure are not controlling." (*LaMar* v. *Superior Court,* 87 Cal.App.2d 126, 129 [196 P.2d 98].) Thus if there was in fact a clerical error in this case, as claimed by plaintiff, the court had the jurisdiction to correct it. It is equally well settled that the court has no jurisdiction in such a proceeding to correct a judicial error. (*Bastajian* v. *Brown,* 19 Cal.2d 209, 214 [120 P.2d 9]; *Stevens* v. *Superior Court,* 7 Cal.2d 110, 112 [59 P. 2d 988].)

Plaintiff bases her contention that the court did not pass on the merits of her motion on a statement of the court made in discussing various aspects of the case at the conclusion of the hearing. This discussion covers approximately five pages of the reporter's transcript. The court began by analyzing the record that was made at the default hearing of the divorce suit and continued with a consideration of the papers that had since been filed and the proceeding that had transpired. Near the end of this analysis the court observed "all of those things being considered . . . I don't see that the court has any jurisdiction to make the modification and even if he

did, the record being what it is, I cannot see that it is a clerical error. . . . The court may, on motion of the injured party or on its own motion, correct clerical mistakes so as to conform with the judgment or order directed. . . .'' The reasonable interpretation of this statement is that the court believed the clerk had fully and correctly recorded the order the court made at the conclusion of the default divorce hearing and that no clerical error had been established. Our interpretation is fortified by the fact that the statement of the court demonstrates its familiarity with its power to correct an order that is the result of a clerical error. It is therefore apparent that the court determined the error, if any, was judicial, and his conclusion that the court lacked jurisdiction was based upon that determination.

We turn now to a consideration of the factual aspects of the case.

Initially it should be noted that the burden of proof is on the plaintiff to establish that there was a clerical error in the clerk's minutes. ''The presumption is that official duty has been regularly performed (Code Civ. Proc., § 1963, subd. 15) and that the minutes of the court are correct.'' (*People* v. *Oster,* 129 Cal.App.2d 688, 692 [278 P.2d 39].) ''The presumptions declared by the provisions of 1963 of the Code of Civil Procedure, 'While disputable are in themselves evidence . . . and will support a finding made in accordance with them, even though there be evidence to the contrary.' '' (*Estate of Wiechers,* 199 Cal. 523, 530 [250 P. 397] ; *People* v. *Siemsen,* 153 Cal. 387, 390 [95 P. 863].) It is, of course, elementary that it is the function of the trial court to pass upon the credibility of the witnesses and to determine the weight to be given their testimony. This same rule applies where affidavits are used. (*Lohman* v. *Lohman,* 29 Cal.2d 144, 149 [173 P.2d 657].)

It is clear from the court's discussion, previously referred to, that the court did not give full credence to the affidavits of plaintiff, her daughter and her attorney. This the court was privileged to do although the affidavits were not contradicted by opposing affidavits in view of the interest of the affiants in the outcome of the case. (*Herron* v. *Pacific Elec. Ry. Co.,* 134 Cal.App.2d 199, 201 [285 P.2d 77] ; *Hill* v. *Thomas,* 135 Cal.App.2d 672, 680-682 [288 P.2d 157].)

Plaintiff contends that it must be assumed that the rulings here in question were in fact made despite their omission in the minutes. She argues that ''it cannot be con-

sidered that Judge McCoy would make the obvious and gross error that would be entailed by a judgment limited to granting" her a divorce and only approving the property settlement agreement. This argument would be more persuasive if it appeared from the transcript in the divorce hearing that either the property settlement agreement or any of its provisions had been drawn to the court's specific attention. There were no allegations in the complaint relative to the terms of the property settlement and no copy of the agreement was attached to the complaint as an exhibit because it had not been executed when the complaint was filed. The examination of plaintiff at the conclusion of her testimony on the charge of cruelty did not indicate or suggest that the property settlement agreement contained any agreement relative to alimony or any provision that it might be incorporated in a decree.[1] In fact, the last question seems to imply that this was truly a property settlement agreement and nothing more. Counsel asked plaintiff: "And do you feel this property settlement agreement makes an equitable distribution of the property? Her answer was "Yes." The document shows that it was duly marked by the clerk as Plaintiff's Exhibit 1. The testimony of plaintiff's daughter as her corroborating witness covers less than two pages of the reporter's transcript. This, of course, did not take very long. If the agreement was handed to the clerk, as it normally might well have been, at the conclusion of plaintiff's testimony it is entirely likely that it never came to the court's specific attention. This would be entirely understandable because there was no suggestion that the agreement presented any problem at all since plaintiff regarded it as "an equitable distribution of the property."

In the court's analysis, previously referred to, of the case at the conclusion of the hearing on plaintiff's motion to

---

[1]On this aspect of the default divorce hearing the transcript reveals the following:

(By Counsel for Plaintiff): "I show you a document which purports to be a property settlement agreement. Have you ever seen this document before? A. Yes, I have.

"Q. I turn to the last page of this document and show you two signatures. Is one of those your signature? A. It is.

"Q. To your best knowledge, is the other signature the signature of Mr. Smith, your husband? A. Yes.

"Q. And do you feel this property settlement agreement makes an equitable distribution of the property? A. Yes.

"MR STONE: I offer it, your Honor.

"THE COURT: Plaintiff's 1.

"MR. STONE: No further questions, your Honor."

correct the clerk's minutes, the court observed that, "The only question asked with respect to the property agreement, following the identification of signatures, being, 'And do you feel this property settlement agreement makes an equitable distribution of the property?' " The court thus seems to imply that no aspect of the agreement was brought to its attention which necessitated any order beyond that of its approval, which could readily be granted upon plaintiff's expressed satisfaction with it. In such a factual setting there would be no reason for the court to make any order relative to the agreement beyond an approval of it.

Plaintiff argues that "the only reasonable inference to be drawn from the undisputed evidence as to the actions of appellant's attorney, supports the conclusion that Judge McCoy must have made the claimed ruling." In support of this argument plaintiff asserts that her counsel conducted the default divorce hearing "so as to obtain for appellant a ruling that would merge the support provisions of the property settlement agreement in the interlocutory judgment of divorce so as to give the court a continuing power of jurisdiction. No other interpretation can be placed on his conduct." This conclusion does not necessarily follow in view of the brief reference to the agreement in that hearing as revealed by the transcript. (See testimony quoted in footnote.)

In this connection plaintiff further argues that the conduct of her counsel "subsequent to the hearing is consistent only with the assumption that the court recognized his efforts and made a ruling permitting the merger." The proper inference to be drawn from such conduct was for the determination of the trial court and in making that determination the court was entitled to take into consideration the state of the record and all the surrounding circumstances.

Plaintiff now seems to complain that the court in making its decision on her motion took into account the extrajudicial statement of the court reporter that it was her practice to record for future reference any additional comments that were made concerning matters incidental to the decree and that upon examination of her notes she found no colloquy between court and counsel in this case. Counsel points out that he had no opportunity to refute the reporter's testimony by cross-examination, which might reveal that her practice in noting everything was not always followed. However, counsel did not suggest to the court any impropriety in its consideration of her statement, nor did he make any re-

quest for an opportunity to cross-examine her. Under such circumstances plaintiff is in no position to complain at this time. (See *Denke* v. *Bowes*, 77 Cal.App.2d 642, 644 [176 P.2d 81.].)

The basic difficulty with plaintiff's argument is that she would have this court reevaluate the credibility of the witnesses, reweigh the evidence, and draw inferences contrary to those drawn by the trial court. Under firmly established principles, an appellate court is not at liberty to do this. (*People* v. *Gould*, 111 Cal.App.2d 1, 8 [243 P.2d 809].)

The order is affirmed.

Ashburn, J., and Kincaid, J. pro tem.,* concurred.

*Assigned by Chairman of Judicial Council.