JOHN R. THERIOT et al., Petitioners, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; AMACORP INDUSTRIAL LEASING CO., INC., et al., Real Parties in Interest.

Robert A. Neeb, Jr., Charles L. Crouch, Jr., Peter F. Burum and W. Alan Thody for Petitioners.

No appearance for Respondent.

Robert M. Miller for Real Parties in Interest.

FOX, P. J.—Petitioners seek by writ of mandate to annul an order granting a new trial, and by prohibition to restrain respondent court from proceeding with a retrial of an action entitled *"John R. Theriot, Alma Theriot and Mont Royal Memorial Hospital, a corporation, Plaintiffs, v. Amacorp Industrial Leasing Co., Inc., a California corporation, and George M. Anderson, Defendants,"* Number 785662.

A summary of the action is set forth in the pretrial conference order: "This is an action by the plaintiffs in which

they seek to have certain real property returned to them or for its value. They also seek damages for alleged misrepresentation in obtaining title to the land in question. Plaintiffs also seek to have a trust impressed upon said real property and for an accounting. Numerous other claims and counterclaims stem from the written agreements and the relationship of the parties. There is also a cross-complaint by the defendant Amacorp for rent, moneys due on a promissory note, on leases and upon an open book account and for various other items. A judgment quieting title is sought by all parties ...."

After an extended nonjury trial, judgment was entered on April 18, 1963, in favor of plaintiffs for $447,329.47, and costs in the amount of $3,417.92. The order further provided that title to the real property involved be quieted in defendant Amacorp and that plaintiffs have an equitable lien thereon to the extent of the money judgment.

In the meantime, plaintiffs had commenced two other actions—No. 793407 on April 5, 1962, and No. 804848 on September 25, 1962, against these and other defendants. One of the defendants in No. 804848 was McDonnell and Co., Inc. This company, however, was not a defendant in the case that had just been heard.

A motion for new trial in the first action (No. 785662) was filed by defendants, specifying all the statutory grounds under section 657, Code of Civil Procedure. Hearing was set for June 6, 1963. At that hearing, Robert M. Miller, Esquire, representing defendant Amacorp Industrial Leasing Co., argued at length for a new trial.[1] He did not, however, make any suggestion relative to a settlement, but he did mention that another action was pending between these same parties and two or three other parties involving the same subject matter. Dee Tanner, Esquire, representing defendant Andersen, followed Mr. Miller. He suggested settlement. Charles Crouch, Esquire, one of the attorneys for plaintiffs, joined in the discussion relative to settlement. Thereupon the court recessed the proceedings to June 10, 1963, suggesting that the parties get together to negotiate a settlement.

When the hearing was resumed on June 10, Angelo Palmieri, Esquire, asked to address the court. He represented McDonnell & Co. which was not a defendant in the case

[1]The proceedings at this session of court were not reported in their entirety.

under consideration but stated to the court McDonnell & Co. was a defendant in a companion case; that after the instant case was at issue, plaintiffs filed another action naming the same defendants and including the underwriters, McDonnell & Co. He noted that he had been in court at the previous hearing on the motions for a new trial and heard the court's remarks with reference to getting the matter settled and thought that McDonnell & Co. would make an effort to get a settlement with plaintiffs. To that end, he told the court, he approached Mr. Crouch, one of the attorneys for plaintiffs, and discussed the matter with him. A discussion followed between the judge, Palmieri, Crouch and Miller relative to various settlement proposals. But no settlement was reached. Just before the noon adjournment Palmieri stated that his client would want all matters disposed of in the event of a settlement. He then again mentioned that another suit was pending; that he thought the likelihood of a judgment's ever being secured against McDonnell & Co. was extremely remote, still ''we don't want to have the case on the books.'' Miller then stated: ''It has to do with all cases.''

At the afternoon session the court and respective counsel discussed various aspects of a settlement without coming to an agreement. During the course of these discussions Palmieri said he had authority to come up to $150,000 as a settlement. During the course of these settlement discussions between the court and counsel, the trial judge, in an effort to bring about an agreement, made some intemperate and improper statements seeking to induce plaintiffs to accept the particular proposition that was then being suggested or offered.[2] After further discussion without agreement, the

[2]At one stage of the discussion it was suggested that plaintiffs receive by way of settlement ''$123,000 cash plus the equipment.'' With respect to this proposal the judge remarked: ''Tell the doctor [Dr. Theriot, one of the plaintiffs] from [sic] me if he doesn't take that then I will order him to go under the care of a psychiatrist.''

With respect to the $150,000 offer the court had this to say: ''THE COURT: ... If someone walked up to me and said, 'Doctor, here is $150,000. Now, let's forget about the experience that you have had, let's forget about the suit that you have coming up, with the attorneys' fees that you are going to have to pay, the costs, the headaches, the worry—here is 150,000 bucks.' How can you in good conscience do anything but tell your client, 'Doctor, take that $150,000 and run, and run as fast as you can before every Tom, Dick and Harry in Los Angeles throws a lien or ties it up some way?'

''Now here is what is going to happen: You will have to try this case all over again, so you guys won't try it any more. You are fools if you

court announced its ruling: The "motion for a New Trial is granted on the grounds of insufficiency of the evidence, unless the plaintiffs accept the sum of $150,000, on or before June 14, 1963, in full settlement of all claims against all of the defendants."

A disagreement almost immediately arose between counsel for plaintiffs and defendants as to the meaning of the condition attached to Judge Scott's new trial order. Counsel for plaintiffs insisted it only referred to settlement of the case in which the motion for a new trial was granted; counsel for defendants insisted it contemplated settlment not only of that case but also of the other two cases previously mentioned. Judge Scott in the meantime had gone to Chicago on vacation.

In an attempt to straighten this matter out, counsel for all parties went to see Presiding Judge Faries, on June 14th - the final day for plaintiffs to accept the condition by which they could avoid a new trial. Judge Faries during the morning talked to Judge Scott in Chicago and at a session held at 3:30 that afternoon advised all concerned that Judge Scott "stated that his order, if not clear, should be amended nunc pro tunc to provide that the $150,000, if accepted this date, on or before June 14, 1963, would be in settlement of all claims as against all defendants in all three actions, to wit: No. 785662, No. 793407 and No. 804848." Judge Faries then accordingly corrected *nunc pro tunc* Judge Scott's order of June 10th. Moments later Judge Faries stated: "Judge Scott told me when I went over the minute order with him that that minute order did not fully and fairly express his position in the matter, and that he agreed that it should be corrected nunc pro tunc to read as I have indicated."[3]

Shortly before 5 o'clock plaintiffs gave notice that they

do. So the doctor is going to have to go out and try to get some other lawyer who is as crazy as you fellows have been to try the case over again. He will have a tough time doing it without him putting up some money, $25,000 or $30,000 on the line. Then he has the other lawsuit he has to fool around with."

A few moments later, and before the judge announced his decision, he made the following comment: " ... I already have the ruling on the motion all written out here and I am all ready to give it. Now if you want me to give it, and I have already told you how it is going to be, against you, if you want me to give it I will give it to you right now and we can get it out of the way and you can try the case all over."

[3]Mr. Palmieri was on an extension telephone during the conversation between Judge Faries and Judge Scott. He agreed with Judge Faries' interpretation of that conversation.

were then willing to accept $150,000 in full settlement of all claims against all defendants in action No. 785662 only (the case in which the conditional order granting a new trial had been made). Defendants gave notice that afternoon that they were ready, willing and able to deliver $150,000 to plaintiffs (and exhibited cashier's checks in that amount) in accordance with the terms and provisions of the *nunc pro tunc* order. Neither of these offers was accepted.

██ Petitioners contend that the *nunc pro tunc* order of June 14, 1963, is void because the court had exhausted its jurisdiction in its ruling of June 10th and could not thereafter make changes of substance in said order.

The general rule is that a court may, at any time, and with or without notice, or on its own motion, correct a judgment or order by a *nunc pro tunc* order so as to make the judgment or order conform to the judicial decision actually made. (*Uhl* v. *Johnson,* 141 Cal.App.2d 659, 665 [297 P.2d 493]; *Benway* v. *Benway,* 69 Cal.App.2d 574, 579 [159 P.2d 682].) By so doing, the court is only exercising its inherent power to correct the records to make them speak the truth. (*Kohlstedt* v. *Hauscur,* 24 Cal.App.2d 60 [74 P.2d 314].) ██ While a court cannot use a *nunc pro tunc* order to correct a judicial mistake, "errors due to the failure of a record to speak the truth or to conform to the decision rendered, and clerical misprisions generally, of which the record affords the evidence, may be corrected at any time by the court. . . ." (*Benway* v. *Benway, supra,* p. 580.) ██ We are of the opinion that the record herein affords sufficient basis to establish that the *nunc pro tunc* order of June 14 merely corrected the previous order to conform to the judicial decision actually made on June 10.

It is unmistakably clear that when the motion for new trial was being argued and settlement proposals were discussed between the court and counsel Judge Scott was aware that related cases between the plaintiffs and these two defendants and others were pending, and that defendants desired to settle all of this litigation at one time. He was also aware of the fact that the company putting up the money for the proposed settlement was not a party to this suit but was a defendant in a related action, and that its counsel had advised the court that he thought the likelihood of a judgment's ever being secured against his client was extremely remote, still they did not want to have the case on the books. Also, in this connection, Mr. Miller had stated the proposed settlement had to do

with all cases. In fact, there was no suggestion during the discussions of the various settlement proposals that any of them related only to the instant case. In this factual context there is a strong inference that in making the order of June 10 Judge Scott intended to and undertook to require the disposition of all three cases in the proposed settlement but that he either inadvertently failed to specifically mention all three cases or the clerk failed to fully record his order. The order that was made is not free from ambiguity. Judge Scott in his telephone conversation with Judge Faries told him that the ''minute order did not fully and fairly express his position in the matter.'' Judge Scott of all persons ought to know whether it was correct for he made it. It is therefore apparent that the court did not exhaust its jurisdiction by its ruling of June 10, as petitioners contend, and that such order did not truly reflect the order that the court either intended or made, hence it was subject to clarification and correction *nunc pro tunc.*

Petitioners also contend that the *nunc pro tunc* order of June 14, 1963, is void because it was made by Judge Scott, the trial court judge, while he was outside of California and therefore without judicial authority to make court orders in this state. A mere reading of the minute order of June 14, however, shows that the *nunc pro tunc* order was in fact made by Judge Faries. It does not appear from the telephone conversation between Judge Scott and Judge Faries that the former was attempting to make a *nunc pro tunc* order in this matter but was simply providing Judge Faries with information upon which he could and did act. The order was therefore the judicial act of Judge Faries alone.[4]

We come now to a consideration of the order of June 10 granting a new trial subject to the condition as reflected by the *nunc pro tunc* order of June 14.

The order granting the new trial was ''on the grounds of insufficiency of the evidence.'' In passing on this question ''it is the exclusive province of the trial court to judge the credibility of the witnesses, to determine the probative force of testimony and to weigh the evidence, and it may draw reasonable inferences therefrom opposed to those drawn by the trier of fact at the trial.'' (*Yarrow* v. *State of California,* 53 Cal.2d 427, 434 [2 Cal.Rptr. 137, 348 P.2d 687].) ''We must assume that the trial judge in

---

[4]Petitioners do not contend that one judge has no authority to correct *nunc pro tunc* the order of another judge in a strictly clerical respect.

passing on the motion for new trial fully performed his duty." (*Coggins* v. *Hanchette*, 52 Cal.2d 67, 77 [338 P.2d 379].) Furthermore, all presumptions are in favor of the order. (*Yarrow* v. *State of California, id.*) There is also a presumption that official duty has been regularly performed. (Code Civ. Proc., § 1963, subd. 15.)

In this proceeding we do not have the evidence before us. We are therefore in no position to say that the trial judge was in error in granting the new trial on the ground of insufficiency of the evidence.

Petitioners, however, challenge the validity of the order on the theory that granting a new trial on the ground of insufficiency of the evidence was merely a technique to force a settlement. But we cannot say, as a matter of law, especially in view of the presumptions noted above, that Judge Scott did not grant the new trial upon the grounds stated in his order.

There is no merit in the suggestion that Judge Scott was guilty of coercion by reason of his intemperate remarks directed to Dr. Theriot in an effort to effect a settlement for he was not persuaded to accept and did not accept any offer or the condition in the order granting the new trial, as reflected in the *nunc pro tunc* order. True, plaintiffs gave notice that they accepted the $150,000 in settlement of the instant suit alone but this was after Judge Faries had made his *nunc pro tunc* order. They then knew that if Judge Faries' order was procedurally proper their offer was wholly ineffectual.

We come now to the question as to the validity of the condition in the new trial order that the $150,000 be in full settlement of the claims against all defendants in all three actions. This condition is patently void because it required settlement of two cases (No. 793407 and No. 804848) which, though related to the instant case, had not been tried and which involved the rights of the plaintiffs against defendants who were not parties to this action.

What then is the effect of the void condition as an alternative to granting the new trial? Logically, a void condition can have no effect on an otherwise valid order. The condition is simply disregarded and the order stands. (*Bledsoe* v. *Decrow*, 132 Cal. 312 [64 P. 397]; *Krebs* v. *Los Angeles Ry. Co.*, 7 Cal.2d 549 [61 P.2d 931]; *Ertman* v. *Municipal Court*, 68 Cal.App.2d 143 [155 P.2d 908, 156 P.2d 940]; *McDonald* v.

*Randolph,* 80 Cal.App.2d 367, 370-371 [181 P.2d 909]; *Jordan* v. *Warnke,* 205 Cal.App.2d 621, 633 [23 Cal.Rptr. 300].)

In the *Bledsoe* case, *supra,* the trial court inserted certain conditions in its order granting a new trial, and provided that in case defendants complied with the conditions named in the order, the motion would be denied. It was argued that the court had no right to insert the conditions because they were not justified in law and therefore the entire order was void. The court did not agree with this argument. It took the position that " ... if the motion was granted for any valid reason, it would not become void because certain conditions not warranted in law were stated as terms upon which defendants could avoid the order." (P. 314.) And as stated in the *Krebs* case, *supra,* "The improper form of the condition would not render invalid an order granting a new trial on a valid ground. If the condition was not complied with, the order granting a new trial, if otherwise valid, became operative." (P. 551.) In *Ertman, supra,* appellant contended that the order granting a new trial was void because it contained a condition permitting him to consent to a reduction of the verdict on a day subsequent to the 60-day period. On this point the court stated: "It would seem more logical that if the court attempted to impose a condition upon the order which it had no power to impose the condition alone should fall rather than the order as a whole." (P. 146.)

Since, as we have previously pointed out, we cannot say as a matter of law that the order granting a new trial was not based on a valid ground, and since the void condition does not affect the order granting the new trial, petitioners are not entitled to any relief in this proceeding.

The alternative writ of prohibition is discharged.

Ashburn, J., concurred.

Herndon, J., did not participate herein.

A petition for a rehearing was denied November 15, 1963, and the petitioners' application for a hearing by the Supreme Court was denied December 11, 1963.