[L. A. No. 28279. In Bank. Apr. 21, 1965.]

ED ROLLAND GILL, Plaintiff and Appellant, v. JUSTIN A. EPSTEIN et al., Defendants and Appellants.

612

Lippold, McCartin & Hall, Lippold, Cross, McCartin & Hall and Christopher Hall for Plaintiff and Appellant.

Tully H. Seymour and Walter W. Charamza, City Attorneys (Newport Beach), for Defendants and Appellants.

McCOMB, J.—Defendants Justin A. Epstein, Samuel Amburgey, John Burns, and Allen L. Johnson, police officers of the City of Newport Beach, appeal from an order granting a new trial and cross-appeal from a judgment entered pursuant to a jury verdict in favor of plaintiff. Plaintiff appeals from the order granting a new trial and cross-appeals from the judgment.

*Facts*: On September 25, 1961, it was discovered that a cash box had been stolen from an elementary school in Newport Beach. Plaintiff was employed as a janitor at the school, and was one of seven persons having a master key to the place where the cash box had been kept.

On October 4 defendant police officers arrested plaintiff without a warrant on "suspicion" of committing theft. The officers then questioned plaintiff and searched his house, garage, and car, but found no evidence connecting him with the crime. At the request of the officers, however, plaintiff consented to submit to a "lie-detector" test. After four tests on October 4, certain of plaintiff's responses were "interpreted" by the polygraph operator as "showing deception."

The same day plaintiff was interviewed in jail by a Dr. Benton. Plaintiff believed he was to be given a dose of sodium pentothal, a so-called "truth serum," but Dr. Benton instead administered sodium amytal, which is not a "truth serum" at all but which causes hallucinations in the patient for four or five hours. After an interview conducted under such circumstances, Dr. Benton concluded that plaintiff "could not be excluded" from consideration as the guilty person. Plaintiff was thereafter interrogated for several more hours and on October 5 was given another "lie-detector" test.

On October 6 at 9 a.m. plaintiff was taken to the district attorney's office, where he was further questioned, and a criminal complaint for theft was drawn up against him. About 1:30 p.m. that day, plaintiff was arraigned in municipal court and then returned to jail. He remained in jail until the preliminary hearing five days later, at which time the case against him was dismissed by the court on motion of the district attorney.

Plaintiff brought this action for false arrest and false imprisonment against the city and the four police officers who handled his case. The first cause of action charged unlawful arrest without probable cause and imprisonment for eight days; the second cause of action charged unnecessary and unreasonable delay in taking plaintiff before a magistrate.

After a judgment of dismissal was entered as to defendant city on sustaining a demurrer, the case went to trial against the four individual defendants. At the close of the evidence, the court determined as a matter of law that there was no probable cause for the arrest and that the delay in taking plaintiff before a magistrate was unnecessary and

unreasonable; accordingly, only the matter of damages was submitted to the jury.

A verdict was returned awarding plaintiff $16,000 in general and special compensatory damages, no punitive damages, and $390 in compensatory damages for the delay in taking him before a magistrate.

Defendants moved for a new trial on the issues of probable cause for the arrest, reasonableness of the delay in taking plaintiff before a magistrate, and the amount of the general and special damages. The motion was made on all the statutory grounds (Code Civ. Proc., § 657) except surprise and newly discovered evidence.

After hearing on September 13, 1962, the trial court by minute order ruled that "the defendant's motion for a new trial as to the judgment upon both Counts be and it is granted unless, within a period of ten (10) days from the date of this order, plaintiff shall file with the Clerk his consent to a remission, in respect of the first count, of the amount of the judgment in excess of $7,610.00."

Plaintiff's counsel thereupon informed the court by letter that they were "unable to determine whether a new trial will be ordered in its entirety or whether the Court will only order a new trial on the issue of damages," and requested a clarification to enable them to decide whether to accept the remission or not.

In response, the court on September 20 (i.e., within the period allowed to plaintiff to accept the remission) made a further order declaring that the conditional order of September 13 "is corrected and modified, nunc pro tunc, by adding on Page 3 after the end of the last sentence the following sentence. If said motion for new trial be granted as aforesaid it is ordered that the new trial thereupon ordered be limited to the issue or issues of damages only."

*Questions*: First. *Did the trial court err in making its order of September 20 modifying nunc pro tunc its previous order of September 13 granting a motion for a new trial on certain conditions?*

*No.* It is contended that the supplementary order of September 20 was a nullity, because it was "a complete change and not a clerical change." It appears, however, that the error was clerical.

These rules are here applicable:

(1) Independent of statute, a trial court has power to correct mistakes and to annul orders and judgments inad-

vertently or improvidently made. A trial court has power to vacate judgments and orders inadvertently made which are not actually the result of the exercise of judgment. It has no power, however, having once made its decision after regular submission, to set aside or amend judicial errors except under appropriate statutory proceedings. (*Estate of Doane, ante,* pp. 68, 71 [2] [41 Cal.Rptr. 165, 396 P.2d 581].)

(2) In determining whether an error is clerical or judicial, great weight should be placed on the declaration of the judge as to his intention in signing the order. (*Estate of Doane, supra,* at p. 71 [3].)

(3) The distinction between a clerical error and a judicial error does not depend so much on the person making it as it does on whether it was the deliberate result of judicial reasoning and determination. (*Estate of Doane, supra,* at p. 71 [4].)

Applying the foregoing rules to the facts in the instant case, it is apparent that the error in the original order of September 13 was clerical, since the record discloses that in granting the conditional order of new trial on September 13, the court intended to limit such trial to the issue of damages.

The question of liability was decided not by the jury but by the court, which determined it favorably to plaintiff as a matter of law.

All indications are that the trial judge thereafter remained steadfast in his ruling on this issue. The very form of the conditional order—predicated, as it was, on a remission by plaintiff of a certain amount of the damages awarded—implies that the question of liability was deemed to be settled. This implication is strengthened by the memorandum opinion filed simultaneously with the conditional order, in which the court continues to speak of plaintiff's "unlawful arrest and excessive detention."

Further, at the time of the hearing held in the trial court in connection with the supplementary order of September 20, counsel for defendants recognized that the sole outstanding issue was the proper amount of damages and that in its original order of September 13 the court "decided that there would be no new trial on the issue of liability."

The trial judge agreed, explaining, "when I made the order of September 20th, even though I am willing to confess it isn't perfectly clear, I had in mind awarding the new trial

on both of the issues, the punitive [damages] issue and the issue of general damages.''

Here, as in *Theriot* v. *Superior Court*, 221 Cal.App.2d 174, 180 [34 Cal.Rptr. 381] (hearing denied by the Supreme Court), the conditional order ''did not truly reflect the order that the court either intended or made, hence it was subject to clarification and correction *nunc pro tunc.*''

Second. *Did the trial court err in granting the motion for a new trial on the ground of excessive damages, appearing to have been given under the influence of passion or prejudice?*

*No.* The ruling of a trial court in granting a new trial on the ground of excessive damages will not be reversed on appeal unless it plainly appears that the trial judge abused his discretion; and when there is a material conflict of evidence regarding the extent of the damage, the imputation of such abuse is repelled, the same as if the ground of the order were insufficiency of the evidence to justify the verdict. (*Strosk* v. *Howard Terminal Co.*, 129 Cal.App.2d 797, 802 [6] [277 P.2d 828]; *Goodman* v. *Atchison, T. & S.F. Ry. Co.*, 94 Cal.App.2d 745, 746 [1] [211 P.2d 310].)

 Plaintiff contends that the verdict negatives passion or prejudice on the part of the jurors, since they refused to award punitive damages, and that there was therefore no basis for the trial judge to find that the damages were excessive, ''appearing to have been given under the influence of passion or prejudice.'' However, although the jury's action may indicate a lack of passion or prejudice *against* defendants, it does not necessarily indicate a lack of passion or prejudice *in favor* of plaintiff.

 Plaintiff further contends that the trial judge abused his discretion in granting the motion, inasmuch as the record shows that his discretion was based upon an erroneous concept of laws pertaining to proximate cause and damages.

Although, as will hereinafter appear, the trial judge misconceived some of the applicable law, the record shows that he took many evidentiary factors into consideration, and it would be impossible for us to determine how much weight he assigned to any particular factor.[1]

---

[1]In granting the motion, the trial judge issued a memorandum opinion and order stating, in part: ''The only other ground for the motion to which reference will be made is that the damages were excessive, 'appearing to have been given under the influence of passion or prejudice.' In ruling upon this ground the Court is required by law to examine the amount of the verdict in light of the evidence. The Court must grant

Under the circumstances, there being a material conflict in the evidence on the issue of damages, the ruling of the trial court should not be disturbed.

■ Third. *Did the trial court err in instructing the jury that it could not award damages for plaintiff's being held in jail after his arraignment?*

*Yes.* The trial court instructed the jury that damages for physical and mental suffering during the period of imprisonment following the order of the magistrate committing him were not legally compensable. The instruction was necessarily based upon the theory that the confinement after arraignment was not proximately caused by the wrongful arrest.

The arraignment would not have taken place had the arrest not been made. Thus, the arrest was a *cause in fact* of plaintiff's imprisonment. ■ Although a chain of causation may

---

a new trial if, and only if, the Court concludes that the verdict is outrageously excessive. It does so.

"The Plaintiff was a nineteen-year-old married man, employed as a school janitor. His unlawful arrest and excessive detention resulted in his being imprisoned for a period of less than 48 hours. The additional period of imprisonment, not quite five days, was carried out pursuant to order of Court after a complaint had been filed and a proper arraignment had been held. There is no credible evidence that the defendants acted in bad faith in arresting and detaining the plaintiff. On the contrary, the jury refused to make any formal award of punitive damages, although they were instructed that they might do so if they found the defendants guilty of oppression or malice. The arrest and detention were not accompanied by conduct or circumstances that were particularly aggravating or outrageous. Nor was there anything about the arrest and detention that would particularly tend or might reasonably be said to be intended to cause extreme humiliation and grievous mental distress to the plaintiff. He did not lose his job and suffered only a modest loss of pay. Such publicity and notoriety as resulted from the arrest was limited to the plaintiff's friends, members of his family and employment associates until the plaintiff himself, seeking redress by way of damages, filed a claim and commenced an action. Had he not sought such redress, it is improbable there would have been any newspaper publicity that called attention to him by name. The mental distress he suffered was not, at least in its extreme form, of prolonged duration. It is likely to have little, if any, permanent residue.

"The foregoing is not intended as a complete catalog of the considerations that bear upon the question of whether the damages awarded were excessive. In light of them, however, the Court concludes that the evidence falls far short of that required to support a verdict of $16,000.00."

No instruction was given on plaintiff's right to recover for damages resulting from the newspaper publicity following his filing of a statutory claim against defendant city. However, upon a retrial of the issue of damages, the question will certainly arise. We therefore deem it appropriate to state that in view of the fact that the filing of the claim was a mandatory condition precedent to an action for damages against such entity, plaintiff's filing of the claim cannot be regarded as a superseding cause which would eliminate the arrest as a proximate cause of the newspaper publicity.

618

be broken by an independent intervening act which is not reasonably foreseeable (see 2 Witkin, Summary of Cal. Law (7th ed. 1960) Torts, § 284, p. 1484), plaintiff's arraignment was not such an act. It was clearly a foreseeable result of the arrest and was actually contemplated by defendants.

Under the circumstances, the arrest was a proximate cause of plaintiff's imprisonment both before and after the arraignment, and he is entitled to recover damages for physical and mental suffering during the entire period he was confined. (Civ. Code, § 3333; cf. *Gibson* v. *J. C. Penney Co., Inc.,* 165 Cal.App.2d 640, 646-647 [331 P.2d 1057] ; *Coyne* v. *Nelson,* 107 Cal.App.2d 469, 475 [237 P.2d 45] ; 22 Cal.Jur.2d (1955) False Imprisonment, § 48, pp. 82-83.)

In view of our conclusions, it is unnecessary to discuss other questions presented in the briefs of counsel.

The order entered September 13, 1962, granting a new trial and the *nunc pro tunc* order entered September 20, 1962, are affirmed. The purported appeals from the judgment are dismissed.

Traynor, C. J., Peters, J., Tobriner, J., Peek, J., Mosk, J., and Burke, J., concurred.