[Civ. No. 49502. Second Dist., Div. Four. Mar. 30, 1977.]

JANICE ALLISON, Plaintiff and Appellant, v.
COUNTY OF VENTURA, Defendant and Respondent.

**COUNSEL**

Bernard Meyerson for Plaintiff and Appellant.

Don Dewberry and Kenneth Carroll for Defendant and Respondent.

**OPINION**

**JEFFERSON (Bernard), J.**—Plaintiff Janice Allison filed a complaint for damages for false imprisonment against defendant County of Ventura. Her amended complaint (hereafter, complaint) was dismissed after a demurrer was sustained without leave to amend. Plaintiff has appealed from the judgment of dismissal.

██ While it does not appear that the factual background of this matter is in dispute, we reiterate the appropriate standard of appellate review of a judgment or order of dismissal of a complaint, granted after a demurrer has been sustained: "A demurrer admits all material and issuable facts properly pleaded. [Citations.] However, it does not admit contentions, deductions or conclusions of fact or law alleged therein. [Citations.]" (*Daar v. Yellow Cab Co.* (1967) 67 Cal.2d 695, 713 [63 Cal.Rptr. 724, 433 P.2d 732].)

Plaintiff's complaint alleged that plaintiff was arrested at her residence at 9:30 p.m. on March 7, 1975, by a deputy sheriff of the Sheriff's Department of Ventura County. She asserts that she was handcuffed and transported to the county jail, where she was imprisoned for many hours.

Plaintiff further alleged that the arrest was made pursuant to a bench warrant which had been issued on December 8, 1971—a date more than three years prior to her arrest—during the course of domestic litigation in Ventura Superior Court between plaintiff and her husband. Plaintiff alleged that "said civil bench warrant, arising out of a domestic case, and outstanding for three years and three months, was not regular upon its face within the purview of Civil Code section 43.5(a), and, therefore, the

deputy sheriff did not act in a reasonable manner in arresting the plaintiff."

Plaintiff also alleged that the arrest and subsequent restraint injured her good name and reputation, and caused her emotional distress and humiliation; she sought general damages in excess of $5,000 and exemplary damages in excess of $5,000.

The arrest warrant, in duplicate original, was attached to plaintiff's complaint as exhibit "A," and incorporated therein by reference. It bore the heading "In re Marriage Janice L. Allison & John O. Allison" with the identifying superior court number—No. D 10028 X. Reciting that an order had been made on December 8, 1971, by the Superior Court of Ventura County in department No. 6, it directed any peace officer to "arrest [plaintiff] because . . . ." There was a space on the warrant immediately after "because," but that space was not filled in.

The middle portion of the warrant was devoted to identifying information about the person upon whom service was to be made—the plaintiff. It indicated a home address, and stated—after "Other information"—"call Karl Dame, Attorney Oxnard - 486-6321."

Below, the warrant stated: "You Are Therefore · Commanded forthwith to arrest Janice L. Allison and bring her before said court on the first day following arrest for the purpose of setting bail." Following this direction, there is a portion of the warrant upon which the amount of bail could be indicated. This, too, was left blank. The warrant directed that [it] "shall be served at any time of the day or night." It was dated December 10, 1971.

Additional information has been obtained concerning the domestic relations proceedings in which plaintiff was engaged:[1] she had filed a dissolution of marriage action in March 1971. As a result, she was ordered to pay certain listed debts of the parties. On November 2, 1971, respondent husband John Allison filed an order to show cause in re contempt, asserting that plaintiff had willfully failed to pay the debts in question. Service of the "OSC" and of a subpoena were made on plaintiff on November 24, 1971, and the proof of service was filed with the court on December 3, 1971. Hearing was set for December 8, 1971.

---

[1]We have reviewed the original court file entitled "In re Marriage of Allison," lodged in the Ventura Superior Court and numbered No. D 10028 X.

The court minutes indicated that neither plaintiff nor her attorney appeared on this latter date. Thereafter, the minutes indicate: "The court, with good cause appearing therefore, orders that a bench warrant issue for the arrest of petitioner, Janice L. Allison, returnable on the first court date following her arrest for the purpose of setting bail." The matter was continued to December 28, 1971. On December 28, 1971, the matter was continued to January 18, 1972; thereafter, to April 18, 1972, at which time Karl Dame, counsel for respondent husband, asked that the court strike the matter from the calendar. The bench warrant, however, was not recalled.

The domestic relations file further indicates that plaintiff appeared in that court on March 12, 1975, and, on the court's own motion, the matter of the bench warrant was stricken from the calendar. On April 30, 1975, the bench warrant was recalled.[2]

When it demurred to plaintiff's original complaint, defendant county asserted that the complaint was unintelligible, but that in any event, plaintiff had failed to state a cause of action for false imprisonment because of defendant's immunity from suit as set forth in the Government Code (§§ 814-862). Defendant specifically relied on certain sections contained therein, i.e., sections 815.2, subdivision (b), 820.4 and 821.6.[3] The demurrer was sustained with leave to amend.

In demurring to the amended complaint, defendant county relied on Civil Code section 43.5(a), which it asserted provided immunity to its deputy sheriff, and thus to his employer, defendant county (Gov. Code, § 815.2, subd. (b), *supra*, fn. 3). Civil Code section 43.5(a) provides: "There shall be no liability on the part of and no cause of action shall arise against any peace officer who makes an arrest pursuant to a warrant of arrest *regular upon its face* if such peace officer in making the arrest

---

[2]The file also contains a memorandum from the sheriff's civil bureau [of Ventura County] to the superior court, dated May 1, 1975, stating that they were returning the recall because "The Civil Bureau has never received any warrant nor have we ever had any action in this entitled case."

[3]Section 815.2, subdivision (b), declares a public entity's immunity from suit for injuries resulting from the conduct of its employee who is immune, "[e]xcept as otherwise provided by statute."

Section 820.4 immunizes employees who, while exercising due care, are executing or enforcing any law. The section specifically provides, however, that "[n]othing in this section exonerates a public employee from liability for false arrest or false imprisonment." (Italics added.)

Section 821.6 further immunizes an employee while "instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause."

acts without malice and in the reasonable belief that the person arrested is the one referred to in the warrant." (Italics added.)

At issue between plaintiff and defendant below was whether the Allison warrant was, in fact, regular upon its face. Plaintiff points to the date of issuance and to the fact that the warrant referred "any peace officer" to a local attorney at law, as factors which rendered the warrant irregular upon its face. The trial court sustained the demurrer, without leave to amend, "on the ground stated"; we presume it was ruling on the main issue of whether the amended complaint stated a cause of action, although the demurrer also reiterated that the complaint was unintelligible.[4]

We discuss first the general immunity problem which has arisen in the decisional law concerning the interaction between Government Code sections 820.4 and 821.6 (see fn. 3, *ante,* for the basic content of these sections). Section 820.4 exempts public employees from any immunity for a cause of action for false arrest or false imprisonment. Section 821.6 confers immunity on public employees while "instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause."

■ ■ It is presently the law that, while the tort of malicious prosecution is barred by Government Code section 821.6 from being asserted against public employees, false arrest and imprisonment causes of action are viable actions against public employees pursuant to Government Code section 820.4. (*Sullivan* v. *County of Los Angeles* (1974) 12 Cal.3d 710 [117 Cal.Rptr. 241, 527 P.2d 865], approving the holding of *Shakespeare* v. *City of Pasadena* (1964) 230 Cal.App.2d 375 [40 Cal.Rptr. 863], and overruling *Watson* v. *County of Los Angeles* (1967) 254 Cal.App.2d 361 [62 Cal.Rptr. 191], and disapproving *Herndon* v. *County of Marin* (1972) 25 Cal.App.3d 933 [102 Cal.Rptr. 221], to the extent that it relied on the *Watson* case.) Thus plaintiff Allison is not barred from pursuing her false imprisonment suit against defendant County of Ventura on the basis of the general governmental immunity statutes contained in the Government Code.

The issue narrows as to whether Civil Code section 43.5(a), that protects peace officers from liability for their actions involving arrests pursuant to warrants of arrest, does constitute a bar to plaintiff. This section immunizes a peace officer from liability for making an arrest

---

[4]We do not find the complaint "unintelligible" although it is not as complete as it might have been in certain particulars which will be enumerated, *infra.*

pursuant to a warrant of arrest *regular upon its face* if [made] "without malice and in the reasonable belief that the person arrested is the one referred to in the warrant." The rationale in support of liability immunization has been expressed in the following terms: "The validity of a judgment of commitment, where the question is a close one, as is true here, is ultimately for the courts, not the sheriff, to decide. A sheriff is a ministerial or executive, not a judicial officer. [Citations.] [¶] It is his *duty* to execute the orders of the court unless they are *patently* irregular and void." (*Vallindras* v. *Massachusetts etc. Ins. Co.* (1954) 42 Cal.2d 149, 154 [265 P.2d 907].) (Italics added.)

In a similar vein, it was stated in *Herndon*, that "[i]t is not his [the arresting officer's] duty to investigate the procedure which led to the issuance of the warrant, nor is there any obligation on his part to pass judgment upon the judicial act of issuing the warrant or to reflect upon the legal effect of the adjudication. On the contrary, it is his duty to make the arrest." (*Herndon, supra,* 25 Cal.App.3d 933, at pp. 936-937; disapproved on other grounds in *Sullivan* v. *County of Los Angeles, supra,* 12 Cal.3d 710, 722, fn. 10.)

What constitutes a warrant "regular upon its face" has traditionally been described in the language of *Pankewicz* v. *Jess* (1915) 27 Cal.App. 340, 342 [149 P. 997]: "An officer whose duty it is to serve process is bound to serve the same when such process is regular on its face. Process is said to be regular on its face when it proceeds from a court, officer, or body having authority of law to issue process of that nature, and *which is legal in form,* and contains nothing to notify or fairly apprise any one that it is issued without authority [citations]." (Italics added.) (See also *Jackson* v. *Osborn* (1953) 116 Cal.App.2d 875 [254 P.2d 871].)

The *Vallindras* court described the meaning of a warrant "regular on its face" by stating: " 'Unless there is a clear absence of jurisdiction on the part of the court or magistrate issuing the process, it is sufficient if upon its face it [the warrant] appears to be valid in the judgment of an ordinarily intelligent and informed layman.' " (*Vallindras, supra,* 42 Cal.2d 149, at p. 154.) (Italics added.)

An important element favoring the long and well-established public policy favoring the immunization from liability of peace officers making an arrest pursuant to an arrest warrant "regular on its face" is found in section 262.1 of the Code of Civil Procedure which provides: "A sheriff or other ministerial officer is justified in the execution of, and *shall* execute, all process and orders regular on their face and issued by

competent authority, whatever may be the defect in the proceedings upon which they were issued." (Italics added.) ■ Both the case law and the statutory law seem to indicate that prompt service of process by a peace officer is in the nature of a *mandatory* duty—a duty of the type envisioned in Government Code section 815.6, which provides that an injury resulting from a lack-of-reasonable-diligence *failure* of a public entity to perform a mandatory duty imposed by a statute that is designed to protect against the risk of such an injury is actionable. (See *Bradford* v. *State of California* (1973) 36 Cal.App.3d 16, 19 [111 Cal.Rptr. 852].)

■ However, Civil Code section 43.5(a), as interpreted by the decisional law, contains important qualifications in conferring immunity from liability on peace officers in making arrests pursuant to arrest warrants. The section does not create an *absolute* immunity. The peace officer must have sufficient knowledge to make a *jurisdictional* judgment as to whether the issuing agent has authority; the peace officer is further required to confirm the absence of *patent* irregularity of the warrant of arrest. Although we recognize that what constitutes patent irregularity is not definitively delineated in the decisional law, its meaning does have relevance to the matter at bench. In addition, the peace officer must act without malice and must use reasonable judgment in making a proper identification of the party to be arrested.

Plaintiff's position on appeal is that a warrant which is valid and regular upon issuance may become "irregular" simply by the passage of time. No case has been cited to us that takes this position. Nor have we been able to find any California decision (or recent decision in another state) on the subject.

In *Quinnette* v. *Garland* (C.D.Cal. 1967) 277 F.Supp. 999, a peace officer served a 12-year-old California misdemeanor warrant on Quinnette—assertedly prompted by malice occasioned by more recent activities of Quinnette. Suit was brought pursuant to the federal Civil Rights Act. The court found for the officer on the ground that malice on his part was not established and, thus, under federal law, no liability could be imposed. But with respect to timeliness, the court stated: "It seems to me that a warrant disclosing on its face that it is more than twelve years old and that it stems from a charge of a minor misdemeanor should not be served by a police officer. . . . it necessarily follows that such a warrant is not regular on its face and should not be executed, and that police officers should be so instructed for their future guidance." (*Quinnette, supra,* 277 F.Supp. 999, at pp. 1000-1001.)

This language in *Quinnette* was criticized in an opinion of the Attorney General dealing with the subject of the timeliness of felony warrants. (57 Ops.Cal.Atty.Gen. 542, 543, Opn. Cr. 72-41, issued Nov. 15, 1974.) That opinion concluded, although on the basis of scant authority, that "[a] bench warrant does not become irregular on its face by reason of the mere passage of time." ▉ We decline to hold, however, *as a matter of law,* that *all* bench warrants of arrest served after a three-year three-month hiatus are irregular on their faces.

Plaintiff, however, makes the argument that timeliness is a factor that should be viewed, along with other circumstances, in the context of the "reasonable" standard as applied to service of the warrant, i.e., that it should be submitted to a trier of fact to determine whether the officer's conduct was reasonable, and thus immunized.

Plaintiff relies on *Robinson* v. *City and County of San Francisco* (1974) 41 Cal.App.3d 334 [116 Cal.Rptr. 125]. In that case, plaintiff had been arrested by police officers pursuant to a warrant which actually directed the arrest of a different individual. To no avail, plaintiff had attempted to offer proof to the arresting officers that he was not the person they sought. The *Robinson* court, interpreting the language of Civil Code section 43.5(a), stated that the section entitled an officer to immunity from liability only if he was acting in the reasonable belief that he was taking the person named in the warrant into custody, and that since this was a triable factual question under the conflicting declarations presented, the summary judgment for the defendant was reversed. Plaintiff suggests that the concept of "reasonableness" as a standard be extended to include situations other than identity, including that presented in the case at bench.

If the reasonableness with which a peace officer acts in making an arrest pursuant to an arrest warrant is subject to application with respect to *every term* used in Civil Code section 43.5(a), the intention of the Legislature to confer immunity except in certain specified situations would be completely thwarted. ▉ By its language, Civil Code section 43.5(a) specifically requires that an officer have a "reasonable belief" that he is arresting the right person—the one described in the warrant. We are unwilling to interpret the provisions of section 43.5(a) to make a "reasonableness" standard applicable to every term used in Civil Code section 43.5(a).

▉ Timeliness of service or execution of a warrant of arrest, however, may appropriately be at issue in certain section 43.5(a)

situations involving malicious service or execution. It bears remembering that section 43.5(a) specifies that immunity is dependent upon the peace officer acting "without malice." It appears to us that the employment by an officer of a long-outstanding warrant of arrest to effect an arrest may, by taking into account all of the circumstances, including the lack of timeliness, establish "malice" and thus provide the basis for a false imprisonment suit in which the officer would not be protected by the immunity created by Civil Code section 43.5(a).

In the case at bench, plaintiff's amended complaint tells us nothing of the circumstances which occasioned the use of the warrant, issued in 1971, to arrest the plaintiff in 1975. It is alleged that she was arrested at her residence. We are not told who had the warrant between issuance and service; we are not told whether plaintiff had come to the attention of police officers in connection with another matter. It may well be that plaintiff had no knowledge in this regard. However, when the case returns to the trial court, plaintiff should be given the opportunity to further amend her complaint to allege malice, if plaintiff claims such was the case. Timeliness, as we have said, can constitute a factor in determining whether malice did in fact exist in the arrest of plaintiff pursuant to the warrant here involved.

■ Plaintiff urges that the notation on the warrant to the effect that more information could be obtained from a local, named attorney, accompanied by his phone number, should be read into the warrant as a condition with which the peace officer should have complied before arresting the plaintiff. We know of no provision in the law for conditional service of process. We do not interpret the notation as a condition; it was merely a tool to assist the officer in carrying out the direction of the court.

The real problem with the warrant in question is *what appeared upon its face* as the reason for plaintiff's arrest: "for the purpose of setting bail."[5] At issue is whether this statement of the purpose of arrest is sufficient to render the warrant "regular on its face" or whether lack of specification of any other basis of the warrant of arrest precludes the warrant from being so characterized. While the warrant in question bore the heading and number of plaintiff's erstwhile domestic relations case, and the date of 1971, nowhere upon it was explained *why* she was being arrested, i.e., the underlying offense for which bail was to be set was not specified.

---

[5]As this issue was not argued below, and was not briefed by the parties, we contacted counsel and asked them to be prepared at oral argument to discuss the issue.

We have discussed at some length in this opinion the underlying public policy supporting immunity from liability for peace officers making arrests pursuant to a warrant of arrest. ■ There is, however, another public policy pertinent to the case at bench, which is also reflected in the California Constitution and the statutory law: severe limitations are placed on the right of peace officers to arrest private citizens pursuant to a warrant of arrest which has been issued in a *civil* action.

The California Constitution, article I, section 10, provides: "Witnesses may not be unreasonably detained. A person may not be imprisoned in a civil action for debt or tort, or in peacetime for a militia fine." This section, enacted in November 1974, replaced article I, section 15, which was repealed but which conveyed the same constitutional concern. Judicial interpretation of this clause has emphasized that any doubts about its application are to be resolved in favor of the citizen. (*Bradley* v. *Superior Court* (1957) 48 Cal.2d 509 [310 P.2d 634].)

Code of Civil Procedure section 501 (replacing former Code Civ. Proc., § 478) currently provides: "A person may not be imprisoned in a civil action for debt or tort, whether before or after judgment. *Nothing in this section affects any power a court may have to imprison a person who violates a court order.*" (Italics added.)

Thus, unless the citizen is impeding the judicial process, California statutory law has followed the constitutionally expressed reluctance to imprison citizens in connection with civil litigation. This principle is stated in *Pousson* v. *Superior Court* (1958) 165 Cal.App.2d 750, 754 [332 P.2d 766] as follows: "Courts of law have no inherent power to arrest citizens or place them in jail. The Legislature makes the law on that subject within constitutional limits. The jurisdiction of courts in matters of arrest is controlled by the Constitution in the first instance, and the next by statutory authorization."

We turn next to those constitutionally and legislatively authorized powers a court possesses to enforce compliance with its orders. There are two statutory sources under California law for issuance of a civil arrest warrant, i.e., a body attachment. (Those sections of the Code of Civil Procedure which formerly set forth the "arrest and bail" procedures available in civil litigation have been repealed.)

"The term 'bench warrant' is not defined in our codes but as applied to civil actions is generally understood to mean a process issued by the

court itself, or from the 'bench,' for the attachment or arrest of a person to compel his attendance before the court to answer to a charge of contempt (Code Civ. Proc., § 1212), or for the failure of a witness to attend in response to a subpoena which has been duly served. (Code Civ. Proc., § 1993.)" (*Silvagni* v. *Superior Court* (1958) 157 Cal.App.2d 287, 290 [321 P.2d 15].)

The appropriate procedures for dealing with a civil contempt are set forth in the Code of Civil Procedure, sections 1209-1222. A warrant directing a body attachment must specify the nature of the contempt and the issuing court or judge *must* specify, by an endorsement on the warrant, the amount of bail. (See Code Civ. Proc., § 1213.) It is evident from review of these code sections that there was, at the time of their enactment, legislative concern for the protection of citizens from confinement in jail for any period of time beyond what is absolutely necessary to comply with the judicial process.

 While nonappearance in response to a subpoena may constitute a contempt of court (Code Civ. Proc., § 1209, subds. 5 and 9), it may also empower a court to invoke the provisions of Code of Civil Procedure sections 1993-1994. Section 1993 provides that a warrant of arrest may issue to compel the attendance of a witness. Code of Civil Procedure section 1994 states: "Every warrant of commitment, issued by a Court or officer pursuant to this chapter, must specify therein, particularly, the *cause* of the commitment, and if it be for refusing to answer a question, such question must be stated in the warrant. And every warrant to arrest or commit a witness, pursuant to this chapter, must be directed to the Sheriff of the county where the witness may be, and must be executed by him in the same manner as process issued by the superior court." (Italics added.)

Thus, pursuant to section 1994, a body attachment may issue to compel the attendance of a witness, but it must specify the *reason* for the attachment. In view of the Code of Civil Procedure section 1213 requirement that bail must be set upon the issuance of a contempt warrant—and the amount thereof be set forth on the warrant—which follows the constitutional provision (art. I, § 12, formerly art. I, § 6) that "[a] person *shall* be released on bail by sufficient sureties, except for capital crimes . . . ."—an additional requirement for a valid body

attachment is the *setting* of bail, rather than a warrant of arrest directing the attachment—an arrest—for the "purpose" of setting bail.

■ The warrant of arrest in the instant case did *not* set bail nor did it specify the cause of or basis for plaintiff's arrest. It further directed that plaintiff be produced in court "on the first day *following* arrest"; since the arrest could be made during the day or night, plaintiff faced potentially long hours of incarceration prior to a court appearance where bail would be set.

Nothing in our law allows a court to cause the arrest of a person in a civil case by the issuance of such a defective warrant of arrest. All the constitutional and statutory provisions seek to protect a citizen against this type of imprisonment. It is apparent from the court minutes in the Allison domestic relations file that plaintiff had not, as of December 8, 1971, been adjudicated in contempt; and none of the applicable provisions of the Code of Civil Procedure were followed in drawing up the warrant for plaintiff's arrest for being in contempt: no specification in the warrant as to the reason or cause for the arrest, and no bail being fixed on the warrant. Since plaintiff had also been served with a subpoena, her attendance in court on December 8, 1971, was required, and a warrant to compel her attendance properly could have been issued pursuant to Code of Civil Procedure sections 1993-1994, citing her failure to appear on the date in question and setting bail.

We conclude that the warrant, as issued, did not meet legally imposed requirements, and was not, therefore, "regular upon its face."

The case law supporting the immunity of peace officers from liability, pursuant to Civil Code section 43.5(a), for arresting persons pursuant to a warrant of arrest, has interpreted "regularity" on the face of the warrant as encompassing everything but the most blatant of errors, presumably on the ground that it takes a legally trained mind to ascertain the legal adequacy of a particular warrant. ■ Peace officers are not required to investigate the supportive legal proceedings from which a warrant issues. However, they are required to exercise the judgment of an "ordinarily intelligent and informed layman" to observe the blatant and patent inadequacy of a warrant emanating from a civil action which directs arrest and neither sets bail nor informs the arrestee of the offense charged for which arrest is ordered.

In the case at bench, it mattered not that the government agent was armed with a piece of paper directing plaintiff's arrest—a piece of paper

issued from a court of competent jurisdiction. The piece of paper did not contain sufficient safeguards or information. Plaintiff has stated a cause of action against defendant County of Ventura.

The judgment of dismissal is reversed.

Kingsley, Acting P. J., and Dunn, J., concurred.