[Civ. No. 54430. Second Dist., Div. Five. Sept. 12, 1979.]

MARY G. MILLIKEN, Plaintiff and Appellant, v.
CITY OF SOUTH PASADENA et al., Defendants and Respondents.

**COUNSEL**

Mary G. Milliken, in pro. per., for Plaintiff and Appellant.

Gilliland, Roberson & Moser and James L. Moser for Defendants and Respondents.

**OPINION**

**ASHBY, J.**—Appellant Mary G. Milliken in propria persona brought this action against the City of South Pasadena and Sergeant Lonnie Johnson of the South Pasadena Police Department for false arrest, false imprisonment, and malicious prosecution. The trial court granted summary judgment for respondents. We hold the judgment must be reversed because there are triable issues of fact which cannot be resolved by way of summary judgment. (Code Civ. Proc., § 437c.)

On May 27, 1972, appellant entered a police station of the South Pasadena Police Department to make a complaint against a neighbor for allegedly disturbing the peace and furnishing liquor to minors. Appellant was personally known to Sergeant Johnson and at that time he informed her that she was subject to arrest on a bench warrant for failure to appear for sentencing on a traffic offense. In fact, however, this warrant had been recalled, because subsequent to its issuance appellant had made an appearance and paid her fine on the traffic matter. Appellant told Sergeant Johnson that the warrant had been recalled because the matter had been taken care of, and also offered to show Sergeant Johnson her bail receipt. Appellant told Sergeant Johnson that if he would check the warrant card file at the police station he would find that the warrant had been recalled. It is a matter of dispute what the warrant card file showed; appellant claimed below that Sergeant Johnson was informed by another officer that the file showed the warrant was recalled, but this was denied by Sergeant Johnson. Notwithstanding the alleged evidence the warrant had been recalled, Sergeant Johnson arrested appellant on the warrant.

After appellant was booked on the warrant and transported from South Pasadena Police Department to Sybil Brand Institute for Women, Sergeant Johnson ordered her arrested without a warrant on another charge, carrying a concealed weapon in violation of Penal Code section 12025. The circumstances leading to this arrest are also vigorously disputed by the parties. According to Sergeant Johnson, appellant carried her purse into the police station but turned it over to her daughter when she was arrested on the traffic warrant. During or after her transportation to Sybil Brand, appellant told the officers that she had a gun in her purse and did not want her daughter to have it. Sergeant Johnson was able to stop the daughter before she left the police station in the car and he searched appellant's purse which was in the daughter's possession. The purse contained a .25 caliber automatic pistol and a clip with 4 live rounds. Appellant's version, on the other hand, is that when she drove to

the police station with her daughter and appellant's friend, Patricia Morgan, appellant left the gun and her purse on the seat of the car, the bullets and clip in the glove compartment. When appellant was taken to Sybil Brand she asked the police to get the gun for safekeeping. According to the declaration of appellant's friend, Patricia Morgan, when appellant was taken to Sybil Brand, Morgan put the gun and clip in her (Morgan's) purse and it was there that Sergeant Johnson found them.

Appellant remained in jail for five days until May 31, 1972, when she was arraigned on a complaint charging violation of Penal Code section 12025, and was released on her own recognizance. On July 20, 1972, the charge was dismissed in the interests of justice on motion of the People.

The instant complaint is framed in three causes of action: (1) false arrest and imprisonment for the arrest on the warrant which had been recalled; (2) false arrest and imprisonment for the arrest without a warrant for violation of Penal Code section 12025; and (3) malicious prosecution for the institution of criminal proceedings on the weapon charge, which proceedings were finally terminated in appellant's favor by dismissal.

The trial court did not specify the grounds of its ruling granting summary judgment to respondents. The defenses raised by respondents were: (1) statute of limitations; (2) immunity for malicious prosecution (Gov. Code, § 821.6); (3) immunity for the first arrest pursuant to a warrant valid on its face (Civ. Code, § 43.5(a)); and (4) that the arrest on the weapon charge is irrelevant since appellant was already in custody under the warrant, and in any event there was probable cause for the weapon arrest. We hold that respondents are correct as to immunity for malicious prosecution, but that the judgment must be reversed because the statute of limitations defense is without merit and the two causes of action for false arrest and imprisonment involve triable issues of fact which cannot be resolved by way of summary judgment.

MALICIOUS PROSECUTION

Respondents correctly contend that appellant has no cause of action against Sergeant Johnson or the city for malicious prosecution in instituting criminal proceedings on the charge of violation of Penal Code section 12025. Government Code section 821.6 provides: "A public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his

employment, even if he acts maliciously and without probable cause." This section continues a well-established immunity which has long been thought necessary to enable law enforcement and prosecuting authorities to function. (*White* v. *Towers,* 37 Cal.2d 727, 730 [235 P.2d 209, 28 A.L.R.2d 636]; *Sullivan* v. *County of Los Angeles,* 12 Cal.3d 710, 719-720 [117 Cal.Rptr. 241, 527 P.2d 865].)

■  However, there is no comparable immunity for false arrest and imprisonment. (*Sullivan* v. *County of Los Angeles, supra* at pp. 720-721; Gov. Code, § 820.4.)

### STATUTE OF LIMITATIONS

■  Appellant filed her complaint on May 31, 1973. Respondents contend that since appellant was arrested on May 27, 1972, she did not file within the one-year limitation period for false arrest and imprisonment. (Code Civ. Proc., § 340, subd. 3.) This argument has no merit, because appellant was not released from jail until May 31, 1972. Although a cause of action arose at the time of arrest and initial imprisonment, the statute of limitations did not commence to run until appellant's discharge from jail. (*Collins* v. *County of Los Angeles,* 241 Cal.App.2d 451, 455 [50 Cal.Rptr. 586]; Annot. (1956) 49 A.L.R.2d 922; 35 C.J.S., False Imprisonment, § 49, p. 714.)

### ARREST ON TRAFFIC WARRANT

■  Civil Code section 43.5(a) provides: "There shall be no liability on the part of and no cause of action shall arise against any peace officer who makes an arrest pursuant to a warrant of arrest *regular upon its face* if such peace officer in making the arrest acts *without malice* and in the reasonable belief that the person arrested is the one referred to in the warrant." (Italics added.) Respondents contend there is nothing in the record which establishes that the bench warrant on the traffic offense was not regular upon its face and contend that therefore Sergeant Johnson was privileged to make the arrest. We conclude, however, that appellant has created a triable issue of fact as to whether Sergeant Johnson had actual knowledge that the warrant had been recalled, and that if appellant could establish such fact at trial the immunity of section 43.5(a) would not be available.

According to appellant, she informed Sergeant Johnson that after the issuance of the warrant she had appeared in traffic court and paid her fine

and that "if he would check the 'warrant cards' which the police department keeps on all tickets that go to warrant for failure to appear, that he would find that it was recalled because I had appeared. He told another officer to pull the warrant card who discovered that 'She's right, Sarg. Here it is; #KM10311.' I then offered my receipt for payment as being made, but he refused to consider any of the foregoing and said: 'Book her.' " In another declaration appellant stated, "As for the arrest pursuant to the bench warrant, SPPD's 'warrant cards' in fact showed, and [Officer] Wackerman told Sgt Johnson that it did show that the warrant had been recalled. The Municipal Court's file and teletypes on this warrant also show it had been recalled and SPPD notified via teletype."[1]

This evidence, if believed, would justify the inference that Sergeant Johnson had actual knowledge that the warrant had been recalled while purporting to arrest appellant pursuant to such warrant. If true, such conduct would not be within the immunity of section 43.5(a).

Citing numerous cases, the court in *Herndon* v. *County of Marin,* 25 Cal.App.3d 933, 936-937 [102 Cal.Rptr. 221],[2] discussed the sound public policy behind the immunity of section 43.5(a). In that case a mistake by a deputy clerk or a deputy district attorney led to the filing of a complaint charging the plaintiff with two traffic violations, notwithstanding that the plaintiff had already been tried on those violations, having been acquitted of one and having paid his fine on the other. A warrant for his arrest was issued and he was arrested. It was contended that the deputy sheriff who arrested the plaintiff pursuant to that warrant was not entitled to the immunity because he had been a witness at the first trial and thus "knew" that a final judicial determination of all aspects of the traffic offense had been made. The appellate court held that no cause of action was stated. "It is not his [the officer's] duty to investigate the procedure which led to the issuance of the warrant, nor is there any obligation on his part to pass judgment upon the judicial act of issuing the warrant or to reflect upon the legal effect of the adjudication. On the contrary, it is his duty to make the arrest. Even though the officer knew of the prior 'final judicial determination,' it was not his duty to demur to execution of the later judicial act of issuing the warrant. . . . [¶] . . . Not only is the peace

---

[1]As of this stage of the litigation, neither the warrant nor the warrant card from police files has been produced. In one of her declarations, appellant stated that the warrant card pertaining to this warrant had disappeared.

[2]Disapproved on another ground in *Sullivan* v. *County of Los Angeles, supra,* 12 Cal.3d 710, 722, footnote 10.

officer not obliged to make inquiry into the validity of the court's action, but it could be obstructive of the court's process if he were to do so. Despite the officer's 'knowledge' of the state of affairs, as alleged after the event, in this particular case, it could be that what was taken for 'knowledge' could be defective in a given case, either as to facts which preceded the issuance of the warrant or as to the legal effect of the facts, and that the officer's refusal or hesitation or even inquiry into the matter would interfere with prompt and efficient execution. . . . [¶] . . . The peace officer is not to be held responsible for complying with his precept. Nor was it his duty to make inquiry upon appellant's request. He could rely on the warrant as the expression of the judicial will." (*Id.,* at pp. 936-937, 939; citations omitted. See also *Vallindras* v. *Massachusetts etc. Ins. Co.,* 42 Cal.2d 149, 154 [265 P.2d 907]; *Malone* v. *Carey,* 17 Cal.App.2d 505, 506 [62 P.2d 166]; *Allison* v. *County of Ventura,* 68 Cal.App.3d 689, 697 [137 Cal.Rptr. 542].)

These considerations are not present in this case, if appellant's version of the incident is believed. Sergeant Johnson was not being asked to investigate "the procedure which led to the issuance of the warrant" nor "to pass judgment upon the judicial act of issuing the warrant" nor "to reflect upon the legal effect of the adjudication." ■ The central theme of the above authorities is that the peace officer must *obey the order of the court.* But if he had actual knowledge that the arrest warrant *did not constitute the order of the court* because it had been recalled, then he could not rely upon the warrant. If he had *actual knowledge* that the warrant had been recalled and nevertheless purported to arrest appellant pursuant to the warrant, the trier of fact would be entitled to infer that he acted with "malice" within the meaning of section 43.5(a). (Cf. *Herndon* v. *County of Marin, supra,* at pp. 938-939 & fn. 4.)

We emphasize that this inference is justified only if the officer had actual knowledge the warrant had been recalled. His innocent or negligent failure to investigate or determine whether the warrant had been recalled would offer no basis for liability. (*Herndon* v. *County of Marin, supra,* at p. 936; *Allison* v. *County of Ventura, supra,* 68 Cal.App.3d at p. 699.) Thus, if the police files did not show that the warrant had been recalled, due to the mistake of some other agency (e.g., *Herndon* v. *County of Marin, supra* at p. 939), or if he merely failed to investigate the files or was negligent in determining what the files showed, no liability would accrue. But if he actually investigated and actually determined that the warrant had been recalled, he should not be entitled to rely upon the warrant as his authority for arrest.

It follows that there are triable issues of fact as to what the police warrant card showed and what Sergeant Johnson knew when he arrested appellant purportedly pursuant to the warrant.

ARREST WITHOUT WARRANT ON
WEAPON CHARGE

Sergeant Johnson found the gun and advised the transporting officers or Sybil Brand to lodge an additional charge against appellant of violating Penal Code section 12025.[3] Appellant's second cause of action alleges the arrest without a warrant and imprisonment on this charge, and that Sergeant Johnson acted maliciously and without probable cause. Respondents contend (1) that this arrest is irrelevant since appellant was already in custody pursuant to the warrant and (2) that there was probable cause for the arrest.

In the circumstances of this case, respondents' argument that appellant's arrest and imprisonment on the weapon charge may be ignored because she was already in custody under the warrant cannot be sustained. In light of appellant's declarations, it cannot be concluded that her imprisonment for five days was attributable solely to the warrant arrest. Appellant remained in jail from May 27, 1972, (Saturday) until May 31, 1972, (Wednesday) when she was released on her own recognizance at her arraignment on the weapon charge. Appellant complains in her declarations about the manner in which bail or bond was set on the weapon charge. It may readily be inferred from appellant's declarations that if the weapon charge had not been lodged against her, she could have secured her release from jail much sooner since the traffic charge involved a smaller amount of money and the warrant had been recalled. Thus the issue of the lawfulness of the arrest on the weapon charge must be faced by respondents.

The alleged violation of Penal Code section 12025 was a misdemeanor. The lawfulness of the arrest was therefore governed by Penal Code section 836, subdivision 1, which provides that a peace officer may arrest a person without a warrant "[w]henever he has reasonable cause to

---

[3]At the time of appellant's arrest, Penal Code section 12025 provided as follows: "Except as otherwise provided in this chapter, any person who carries *concealed upon his person or concealed within any vehicle which is under his control or direction* any pistol, revolver, or other firearm capable of being concealed upon the person without having a license to carry such firearm as provided in this chapter is guilty of a *misdemeanor,* and if he has been convicted previously of any felony or of any crime made punishable by this chapter, is guilty of a felony. . . ." (Italics added. Stats. 1955, ch. 1520, § 1, p. 2799.)

believe that the person to be arrested has committed a public offense in his presence." As to the officer's civil liability, Penal Code section 847 provides: ". . . There shall be no civil liability on the part of and no cause of action shall arise against any peace officer, acting within the scope of his authority, for false arrest or false imprisonment arising out of any arrest when: [¶] (a) Such arrest was lawful or when such peace officer, at the time of such arrest had reasonable cause to believe such arrest was lawful; . . ." ■ The issue therefore is whether Sergeant Johnson had reasonable cause to believe that appellant was guilty of committing the offense in his presence.

■ Where the facts are undisputed, or have been resolved on conflicting evidence by the trier of fact after trial, the issue of reasonable cause to make an arrest is a question of law. (*Giannis* v. *City and County of San Francisco,* 78 Cal.App.3d 219, 224-225 [144 Cal.Rptr. 145].) ■ Here, however, that issue is not ripe for decision since the facts concerning the arrest are disputed and there has been no trial. Depending on which declarations and answers to interrogatories are believed, there are several different versions of the facts surrounding discovery of the gun. There is dispute both as to where the gun was located while appellant was in the police station, and where the gun was found by Sergeant Johnson. According to Sergeant Johnson, appellant carried her purse into the police station, appellant turned this purse over to her daughter when she was booked on the warrant, appellant subsequently told the police the gun was in her purse, and Sergeant Johnson found the gun in appellant's purse which was in the daughter's possession.

Appellant, on the other hand, claimed that she originally left the gun on the front seat of her car and that she did not take her purse into the police station. Appellant concedes that she told the police about the gun, but she did not necessarily tell the police that the gun was in her purse. She says she simply told the police to take the gun away from her daughter and appellant's friend but to leave the purse with the daughter so that the daughter could use the money which was in it. Furthermore, appellant and her friend have a different version of where the gun was found by Sergeant Johnson. Patricia Morgan declared that after appellant was arrested on the warrant, Morgan took the gun from the front seat of the car and put it in her (Morgan's) purse, and that Sergeant Johnson searched her purse and found the gun there. Sergeant Johnson contradicted this by saying the only purse which had been searched was the one

which appellant had carried into the police station and then turned over to her daughter.

The many possible variables in the circumstances render it inappropriate for us at this point to attempt to hypothesize the different possibilities and rule as to each whether there would or would not be reasonable cause for arrest. It is sufficient to note that many of the disputed facts raise serious questions about one or more of the necessary elements for a good arrest, possession, concealment, and commission in the presence of the officer. Certainly this is not a case of undisputed facts showing reasonable cause as a matter of law. There are disputed issues of fact which must be tried.

The judgment is reversed.

Kaus, P. J., and Stephens, J., concurred.