[Civ. No. 22257. Fourth Dist., Div. One. July 14, 1981.]

SERGEANT JACKSON, Plaintiff and Respondent, v.
CITY OF SAN DIEGO, Defendant and Appellant.

**COUNSEL**

John W. Witt, City Attorney, Ronald L. Johnson, Chief Deputy City Attorney, and Vincent P. Di Figlia, Deputy City Attorney, for Defendant and Appellant.

Sheela, Lightner & Castro, Barton C. Sheela, Jr., and Kim W. Cheatum for Plaintiff and Respondent.

**OPINION**

**WIENER, J.**—The emotionally charged question in this appeal is whether an innocent man, convicted and imprisoned for crimes he did not commit, can obtain damages for the entire period of his incarceration.

We are unable to treat this question as an original proposition. The Legislature in enacting the California Tort Claims Act (Gov. Code,

§ 810 et seq.)[1] has explored and attempted to balance the competing policy considerations for and against governmental immunity. By expressly providing in section 820.4 that a public employee is liable for false arrest or false imprisonment, the Legislature acknowledged the importance of the individual's right of freedom and to move about in society in an unrestrained manner free from oppressive action. However, in granting immunity to the public employee for malicious prosecution (§ 821.6) it recognized the chilling effect and impediments to law enforcement if public officers and public prosecutors were to be held liable for their official conduct. (See *White v. Towers* (1951) 37 Cal.2d 727 [235 P.2d 209, 28 A.L.R.2d 636]; also generally, A Study Relating to Sovereign Immunity, 5 Cal. Law Revision Com. Rep. (1963) pp. 406-415.) As we will explain, we interpret the Legislature's action as reflecting its intent that a ceiling be placed on damages which may be awarded for false imprisonment, limiting those damages to the period of incarceration beginning with the false arrest, but ending when lawful process begins. We hold here that Jackson is entitled to all the damages he suffered during the period from his warrantless arrrest to the date he was rearrested pursuant to the grand jury indictment. Accordingly, we must reverse the judgment for limited retrial on the issue of damages only.

## Background

### Appeal

Sergeant Jackson was convicted of robbery and murder. When he was released from prison after spending about 10 months in custody, he sued the City of San Diego for false imprisonment. A jury awarded him $280,000. The city appeals.

### Trial—Factual and Procedural History

Because the city does not challenge the sufficiency of the evidence supporting liability, the facts are stated briefly only to set the stage underlying these proceedings.

Robert Hoke, a gas station attendant, was murdered and robbed on November 26, 1973. The police investigation and the subsequent arrest of Jackson turned on information received from a Victor Thomas, a po-

---

[1] All statutory references are to the Government Code unless otherwise specified.

lice informant. Thomas told San Diego detectives that on the day after the murder, Jackson had come to Thomas' home and said he and Gilbert Andrews had gone on the previous day to a bar next to the gas station and after leaving the bar got into a fight with the gas station attendant, hit him and robbed the station. Thomas' categorical identification of Jackson was at odds with the description of either assailant given by several witnesses at the scene after the incident and contrary to the statement of another witness who positively excluded Jackson as the robber from a photographic lineup.

On December 4, 1973, Jackson was arrested without a warrant for Hoke's murder and robbery. The wallet in Jackson's possession was later incorrectly identified by the victim's wife as belonging to her husband.

On December 6, 1973, a felony complaint was issued charging Jackson with murder and robbery. Thirteen days later, December 19, the grand jury returned an indictment against Jackson for these crimes. A bench warrant for his arrest was issued on the indictment the following day. On December 21, the criminal complaint was dismissed and Jackson was then held pursuant to the indictment and warrant. On February 24, 1974, a jury convicted him of both first degree murder and first degree robbery. He was sentenced to state prison on April 8, 1974, for the term prescribed by law. During his incarceration, Clarence Blunt came forward and implicated himself in the murder of which Jackson had been convicted. Blunt was tried and convicted. Jackson was set free. Pursuant to Jackson's writ of habeas corpus, the charges against him were dismissed in the furtherance of justice and the judgment of conviction was vacated on October 29, 1974.

*Discussion*

There are two distinct paths we can take in our analytical journey to determine whether events occurring after Jackson's warrantless arrest restrict the amount of damages which he may receive. One path, with a couple of byways, is to proceed with a traditional tort analysis, examining whether Jackson's indictment or later jury conviction are independent intervening acts severing the chain of causation for damages arising from his false imprisonment. The first byway we encounter is best exemplified by the New York rule "that damages for false arrest should be limited to the period before arraignment since after arraignment the accused is no longer held as a result of the arrest but as a

result of the intervening act of the arraigning Magistrate [citations]."[2] (*Broughton* v. *State* (1975) 37 N.Y.2d 451, 459 [373 N.Y.S.2d 87, 95-96, 335 N.E.2d 310.) Our Supreme Court in a somewhat similar fashion has held where a plaintiff prevails at the preliminary hearing and is not imprisoned beyond an independent evaluation of probable cause, he is entitled to all damages proximately related to his entire period of confinement. The court explained: "The trial court instructed the jury that damages for physical and mental suffering during the period of imprisonment following the order of the Magistrate committing him were not legally compensable. The instruction was necessarily based upon the theory that the confinement after arraignment was not proximately caused by the wrongful arrest. [¶] The arraignment would not have taken place had the arrest not been made. Thus, the arrest was a *cause in fact* of plaintiff's imprisonment. Although a chain of causation may be broken by an independent intervening act which is not reasonably foreseeable [citation], plaintiff's arraignment was not such an act. It was clearly a foreseeable result of the arrest and was actually contemplated by defendants. [¶] Under the circumstances, the arrest was a proximate cause of plaintiff's imprisonment both before and after the arraignment, and he is entitled to recover damages for physical and mental suffering during the entire period he was confined. [Citations.]" (Original italics.) (*Gill* v. *Epstein* (1965) 62 Cal.2d 611, 617-618 [44 Cal.Rptr. 45, 401 P.2d 397].)

Another less mechanical byway along this path is to permit the trier of fact to hear evidence in order to factually resolve whether later events, individually or cumulatively, give rise to an independent intervening cause of the damages. For example, a jury could decide whether the grand jury indictment severed the chain of causation or whether it was so dependent upon the prosecutor and law enforcement that its action in returning an indictment was preordained and orchestrated by the formers' submission of selective evidence. The practical and legal problems associated with this approach include not only the substantial amount of time used in relitigating questions regarding the propriety of the district attorney's performance of his prosecutorial role, but also the retrospective guesswork by petit jurors in a civil case of whether grand

---

[2]"The rationale for the rule is that arraignment (or indictment) involves an independent evaluation of the grounds for the charges against the defendant. Detention subsequent to such an evaluation, or costs subsequently incurred, cannot be attributed to the earlier improper arrest, since there has been an independent, supervening determination of probable cause which cuts off the liability of the arrestor." (*Scanlon* v. *Flynn* (S.D.N.Y. (1978) 465 F.Supp. 32, 40.)

jurors acted correctly in issuing an indictment. To say, as a matter of law, however, that the indictment terminates damages for false imprisonment because of its independent nature is inconsistent with our Supreme Court's description of the grand jury process. "Indeed, current indictment procedures create what can only be characterized as a prosecutor's Eden: he decides what evidence will be heard, how it is to be presented, and then advises the grand jury on its admissibility and legal significance." (*Hawkins* v. *Superior Court* (1978) 22 Cal.3d 584, 592 [150 Cal.Rptr. 435, 586 P.2d 916].)

Faced with the foregoing obstacles, we take the other path, analyzing the Legislature's purpose in immunizing the public employee from damages for malicious prosecution, while retaining liability for the tort of false imprisonment.

■ """False imprisonment is the unlawful violation of the personal liberty of another" (Pen. Code, § 236), the interference ... [being] absolutely unlawful and without authority...."" (*Singleton* v. *Perry* (1955) 45 Cal.2d 489, 494 [289 P.2d 794], quoting *Neves* v. *Costa* (1907) 5 Cal.App. 111, 117-118 [89 P. 860]; *Barrier* v. *Alexander* (1950) 100 Cal.App.2d 497, 499 [224 P.2d 436].) "'Malicious prosecution is procuring the arrest or prosecution of another under lawful process, but from malicious motives and without probable cause.'" (*Singleton* v. *Perry, supra*, 45 Cal.2d at p. 494; *Barrier* v. *Alexander, supra*, 100 Cal.App.2d at p. 499; *Sullivan* v. *County of Los Angeles* (1974) 12 Cal.3d 710, 720 [117 Cal.Rptr. 241, 527 P.2d 865]; 4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 242, pp. 2522-2523.) Even though each tort may cause a person to be restrained or confined, each remains distinct, protecting different personal interests. False imprisonment protects the personal interest in freedom from restraint of movement; malicious prosecution protects the personal interest in freedom from unjustifiable litigation. (See Prosser on Torts (4th ed. 1971) pp. 42, 834.) When a person """is arrested or confined without a warrant, or legal authority apart from a warrant, malicious prosecution will not lie, since the essence of that tort is the perversion of proper legal procedure, and the remedy is false imprisonment. On the other hand, if there is valid process or due authority apart from it, the arrest is not 'false' and the action must be one of malicious prosecution."""" (*Collins* v. *City and County of San Francisco* (1975) 50 Cal.App.3d 671, 677 [123 Cal.Rptr. 525], quoting *Bulkley* v. *Klein* (1962) 206 Cal.App.2d 742, 746-747 [23 Cal.Rptr. 855].)

The difference between the torts did not go unnoticed by the Legislature when it enacted the California Tort Claims Act. (See *McKay* v. *County of San Diego* (1980) 111 Cal.App.3d 251, 254 [168 Cal.Rptr. 442].) While providing immunity from malicious prosecution (§ 821.6),[3] the act specifically declares that a public employee and, derivatively the public entity (§ 815.2),[4] remains liable in tort for false arrest or false imprisonment (§ 820.4).[5] The act thus preserved the well-established immunity for malicious prosecution which had long been thought necessary to enable law enforcement and prosecuting authorities to function (*Milliken* v. *City of South Pasadena* (1979) 96 Cal.App.3d 834, 840 [158 Cal.Rptr. 409]), while continuing liability for false imprisonment for which no comparable immunity had ever attached. (*Sullivan* v. *County of Los Angeles, supra*, 12 Cal.3d at pp. 720-721.) Impetus to continue immunity in favor of the public employee and the public entity for malicious prosecution came from what was earlier described as a policy which in effect subordinated the hardship suffered by some individuals in favor of "'promoting the fearless and effective administration of the law for the whole people by protecting public officers from vindictive and retaliatory damage suits....'" (*Collins* v. *City and County of San Francisco, supra*, 50 Cal.App.3d at pp. 678-679, quoting from *White* v. *Towers, supra*, 37 Cal.2d at p. 729.)

The legislative determination was not made precipitously. It followed the preparation and publication by the California Law Revision Commission of its report and recommendation and the research study of Professor Arvo Van Alstyne. (See 4 Cal. Law Revision Com. (1963) p. 803.) Professor Van Alstyne asked the Legislature to consider "the interest in protecting an innocent citizen against the expense, inconvenience and disgrace of being forced to defend against unjustified and

---

[3]Section 821.6 provides: "A public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause."

[4]Section 815.2 provides in its entirety: "(a) A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative.

"(b) Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability."

[5]Section 820.4 provides: "A public employee is not liable for his act or omission, exercising due care, in the execution or enforcement of any law. Nothing in this section exonerates a public employee from liability for false arrest or false imprisonment."

maliciously interposed charges of crime" (A Study Relating to Sovereign Immunity, 5 Cal. Law Revision Com. Rep. (1963) p. 413) and the commission accordingly recommended liability for public entities under such circumstances. (Recommendation Relating to Sovereign Immunity, No. 1—Tort Liability of Public Entities and Public Employees (Jan. 1963) 4 Cal. Law Revision Com. Rep. (1963) p. 817.) The proposed code section provided the public entity be liable for damages proximately caused by a public employee instituting an administrative or judicial proceeding without probable cause and with actual malice. The Senate, however, amended the bill to strike that section (see Sen. J. (1963 Reg. Sess.) p. 801), which was then passed by the Assembly without that code section. Thus, the Legislature unequivocally rejected the principle that innocent citizens who were wrongfully prosecuted were entitled to redress "*even if* . . . [the public employee] acts maliciously and without probable cause." (§ 821.6, italics supplied.)

■ We are constantly reminded that in interpreting legislation, we must "begin with the fundamental rule that a court 'should ascertain the intent of the Legislature so as to effectuate the purpose of the law'" (*Moyer v. Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224], quoting *Select Base Materials* v. *Board of Equal.* (1959) 51 Cal.2d 640, 645 [335 P.2d 672]), acting in a reasonable fashion to give statutes a sensible construction in accordance with the purpose of the lawmakers in an attempt to promote rather than defeat the policy underlying the legislation. (See *City of Costa Mesa v. McKenzie* (1973) 30 Cal.App.3d 763, 770 [106 Cal. Rptr. 569].) We may not substitute our own views for those of the Legislature where the legislative decision has been made after weighing policy matters as seen by the legislators. (*Drennan v. Security Pac. Nat. Bank* (1981) 28 Cal.3d 764, 779 [170 Cal.Rptr. 904, 621 P.2d 1318].)

With these concepts in mind, certain conclusions follow. Had Jackson's restraint started after his indictment (lawful process), he would be entitled to nothing. (See generally, *Collins v. City and County of San Francisco, supra,* 50 Cal.App.3d 671.) Had the grand jury voted not to indict, his damages for false imprisonment would have been limited to the period of time from his warrantless arrest up to the date of his release. (See *Gill v. Epstein, supra,* 62 Cal.2d at p. 618.) The complicating factor here is that conduct which at first constituted false imprisonment became merged with conduct constituting malicious prosecution. Jackson's indictment and later jury conviction were all accomplished through lawful process, even though the first step, the ar-

rest, was unlawful. As tempting as it might be to focus on the legalism of proximate cause to compensate Jackson for all damages he suffered, we cannot do so.

■ Proximate cause does not always mean cause in fact. The phrase may encompass questions of policy of whether the law will extend the responsibility for the conduct to the consequences which have in fact occurred. (Prosser, Law of Torts, *supra*, at p. 244.) Because of practical considerations, "'the law [on occasion] arbitrarily declines to trace a series of events beyond a certain point.'" (*Mosley* v. *Arden Farms Co.* (1945) 26 Cal.2d 213, 221 [157 P.2d 372, 158 A.L.R. 872] (conc. opn. of Traynor, J.), quoting *Palsgraf* v. *Long Island R. Co.* (1928) 248 N.Y. 339, 352 [162 N.E. 99, 59 A.L.R. 1253] (dis. opn. of Andrews, J.).) We do not have the opportunity here to decide this policy question for the Legislature has already decided it for us. A victim of malicious prosecution may not receive compensation from the public entity.

Conceivably, if it were impossible to apportion damages caused by the different torts, we might have a different question. Under such circumstances, the legislative policy of continuing the common law liability for false imprisonment preserved in section 820.4, might outweigh the legislative policy in prohibiting damages for malicious prosecution. We do not reach this question, however, because apportionment is possible.

A person kept in custody after his jail term expires is entitled to redress for damages for false imprisonment even where the incarceration starts in a lawful manner. (*Sullivan* v. *County of Los Angeles, supra*, 12 Cal.3d at p. 721; *Shakespeare* v. *City of Pasadena* (1964) 230 Cal. App.2d 375 [40 Cal.Rptr. 863].) Thus conduct which might constitute malicious prosecution can become actionable as the tort of false imprisonment when the individual is not released pursuant to court order. Damages in that case accrue when false imprisonment begins. It is equally logical to apportion damages for false imprisonment when it precedes the malicious prosecution as when it follows it.

Jackson's limited right to damages caused by his false imprisonment is not only consistent with the legislative policy which we have described, but also the historical distinction between the torts of false imprisonment and malicious prosecution, tactical considerations which require an election by a plaintiff as to which count he will take to a jury when both counts are joined (see *Singleton* v. *Perry, supra*, 45 Cal.2d

at pp. 494-495), and with the holding in *Gill* v. *Epstein, supra*, where the injured party was released at the preliminary hearing stage. ██ Within this framework of stare decisis and legislative direction, we are compelled to reverse the judgment to permit retrial on the issue of damages.[6]

██ (See fn. 7.) *Disposition*[7]

---

[6]Our decision is also consistent with *McKay* v. *County of San Diego, supra*, 111 Cal.App.3d 251, and the application of Civil Code section 43.5(a), where a public employee maliciously arrested and imprisoned another by personally serving an arrest warrant issued solely on information deliberately falsified by the arresting officer himself. Section 43.5(a) provides: "There shall be no liability on the part of and no cause of action shall rise against any peace officer who makes an arrest pursuant to a warrant of arrest regular upon its face if such peace officer in making the arrest acts without malice and in the reasonable belief that the person arrested is the one referred to in the warrant." The section "provides only conditional immunity. A failure of any condition prevents immunity from attaching to a peace officer making the arrest." (*McKay* v. *County of San Diego, supra*, at p. 254; see *Milliken* v. *City of Pasadena, supra*, 96 Cal.App.3d at pp. 840-842; *Allison* v. *County of Ventura* (1977) 68 Cal.App.3d 689, 698 [137 Cal.Rptr. 542].) Under the factual circumstances of *McKay*, Civil Code section 43.5(a) created an exception to the blanket immunity provided for in section 821.6. Whether the Legislature intended this section to establish liability and not solely as a shield to protect the arresting officer is a matter not before us. (See *Herndon* v. *County of Marin* (1972) 25 Cal.App.3d 933, 938 [102 Cal.Rptr. 221], disapproved on other grounds in *Sullivan* v. *County of Los Angeles, supra*, 12 Cal.3d at p. 722, fn. 10.) It is, however, clear the Legislature has not enacted any comparable exception to statutory immunity for malicious prosecution under the facts here where the malicious prosecution cause of action evolved after the ripening of the false imprisonment cause of action.

[7]In light of the foregoing as well as the nature of the City's remaining contentions, we do not address them in the body of this opinion but briefly dispose of them in the following manner:

First, its assertion the judgment NOV should have been granted is totally devoid of merit. Its reliance on *Bealmear* v. *So. Cal. Edison Co.* (1943) 22 Cal.2d 337, 340 [139 P.2d 20], for the proposition Jackson's prior criminal conviction conclusively establishes probable cause as a matter of law is misplaced, as *Bealmear* involved a civil suit seeking damages for malicious prosecution, not false imprisonment. For the proper rule regarding the latter, see *Collins* v. *Owens* (1947) 77 Cal.App.2d 713, 717-718 [176 P.2d 372]. (See generally, *Singleton* v. *Perry* (1955) 45 Cal.2d 489, 495 [289 P.2d 794] and *Coverstone* v. *Davies* (1952) 38 Cal.2d 315, 319 [239 P.2d 876].)

Secondly, the City's contention the trial court erred in excluding some of its proferred evidence under Evidence Code section 352, as well as admitting some allegedly improper evidence, is equally without merit. Upon a detailed review of each of the eight individual evidentiary matters, we conclude the trial court acted properly and did not abuse its discretion, and that where error was feasible, it was assumed and determined to be harmless.

Finally, the City urges the trial court erred in giving "Composite Jury Instruction No. BB—Reasonable Cause For Arrest." Specifically, in order to have reasonable cause to arrest, the court instructed the evidence must establish there was a reliable informant, the information implicated Jackson in the murder, one suspect's description given by

Judgment is reversed to permit a limited retrial on damages only. Each party is to bear its own costs on appeal.

Work, J., concurred.

Staniforth, Acting P. J., concurred in the result.

Respondent's petition for a hearing by the Supreme Court was denied October 7, 1981.

---

the witnesses was consistent with Jackson's description, and the police officers were justified in relying on such information. The City asserts the instruction constituted a directed verdict, because it was in the conjunctive; the third element was "an invitation to a plaintiff's verdict" due to the wide disparity of physical descriptions; and, it was in conflict with a previously given instruction that "a valid arrest may be based solely upon information obtained by a single, reliable informant."

It is undisputed that in a false imprisonment case where the evidence is in conflict as to probable cause, it is the duty of the trial court to instruct the jury as to what designated facts, if established, would amount to probable cause. (*Roberts v. City of Los Angeles* (1980) 109 Cal.App.3d 625, 629-630 [167 Cal.Rptr. 320]; *Gibson v. J. C. Penney Co., Inc.* (1958) 165 Cal.App.2d 640, 645 [331 P.2d 1057].) BAJI No. 6.86 has been developed in response to this rule of law, as it provides: "To constitute reasonable cause for the [arrest] [detention] of the plaintiff in this case, the evidence must establish that: (Here set forth the evidence of facts which, if true, would establish reasonable cause as a matter of law.)

"If you find from all of the evidence that the foregoing facts are true, you must find that there was reasonable cause to [arrest] [detain] the plaintiff.

"If you find that such facts are not true, you must find that there was not reasonable cause to [arrest] [detain] him." The trial court appropriately patterned its instruction after BAJI No. 6.86, as we can find no error in its content and guidance to the jury.

The trial court correctly designed the instruction by including the necessary specific facts within the instant case which would satisfy a finding of probable cause. The trial court properly took into consideration all of the facts known to the police officers at the time of the arrest. Regarding the consistency of the witnesses' descriptions and the description of Jackson, the City introduced a considerable amount of evidence pertaining to the variances within the physical descriptions of the suspects and Jackson's wearing of a full length coat so as to logically have him fall within the description of one of the suspects. The materiality of this element is without question. Regarding the conjunctive nature of the instruction, it must be so in order to have the jury properly conclude the existence of reasonable cause. Finally, regarding the inherent conflict between the composite instruction and the instruction given to the effect that probable cause could be based solely upon the information obtained by a single, reliable informant, if there was confusion it logically inured to the benefit of the City. Nevertheless, under the circumstances of this case, the superseding composite instruction was necessary. Thomas' reliability was "shakey." He was in jail for grand theft and was released in return for his hearsay information that Jackson had come to his house and told him he had "done a number" on the employee at the gas station. Consequently, in order to have probable cause, there must have been some additional information connecting Jackson to the crime, such as eyewitness identification.